[Civil No. 3683. Filed March 30, 1936.]

[56 Pac. (2d) 183.]

FOX TUCSON THEATRES CORPORATION, a Corporation, Appellant, v. EMMA LINDSAY and EMMA LINDSAY as Administratrix of the Estate of J. G. Lindsay, Deceased, Appellees.

Mr. Francis M. Hartman, for Appellant.

Messrs. Cusick & Lyons, for Appellees.

LOCKWOOD, C. J.—This is an action by Emma Lindsay individually, hereinafter called plaintiff, and Emma Lindsay as administratrix of the estate of J. G. Lindsay, deceased, against Fox Tucson Theatres Corporation, a corporation, hereinafter called defendant, to recover damages for injuries which it is alleged plaintiff suffered as a result of the negligence of defendant. The case was tried to a jury, which returned a verdict in her favor in the sum of $1,500, and from the judgment thereon and the order overruling the motion for new trial, this appeal is taken.

The facts of the case, stated as strongly in behalf of plaintiff as they may reasonably be inferred from the evidence, as under our familiar rule we must assume them, are as follows: On November 11, 1933, J. G. Lindsay and Emma Lindsay were husband and wife, and on that day Mrs. Lindsay visited the Fox Theatre in Tucson, owned and operated by defendant. In the basement of this theater, and reached by stairs from the main floor lobby, is a lounge or waiting room for the use of patrons, and opening from this lounge is a ladies' lavatory. The latter is reached

by ascending three or four steps from the lounge, at the entrance to which are curtains, then crossing a narrow landing and passing through a door which opens inward, into the lavatory. At the time of the accident on which this suit was based, the lounge or waiting room, which is 30 feet long and 25 feet wide, was lighted by twenty-three 10-watt colored electric bulbs, placed behind screens, and two lighted signs. In the ceiling of a small vestibule, and above the steps leading to the lavatory, there was a 10-watt bulb which was not lighted at the time of the accident. Mrs. Lindsay descended from the main lobby of the theater to this lounge and stood there for some time before she could see the entrance to the lavatory because of the light, which she testified was very dim. She then ascended the steps leading to the lavatory and entered it. This room is much smaller than the lounge and was lighted by two white bulbs, one of 100 and the other of 50 watts. After remaining there a few moments, she left the lavatory by the door through which she had entered. There is a marked difference in the degree of lighting in the lavatory and on the stairs and in the lounge, and when the lavatory door had closed behind her, it seemed quite dark to her. She stood for a few moments, trying to get her bearings, but there being no usher or other person whom she could ask to help her, she felt for a banister, and finding none, edged to about the middle of the passageway, and stood there for a few seconds, and then cautiously moved her feet forward, as she thought, to the edge of the step so that she might step down, but missed her footing and fell the full length of the three or four steps to the floor of the lounge, with her feet crumpled under her. As a result thereof, she suffered a painful injury which was diagnosed by the physician who

attended her as a severe sprain and torn ligaments of the ankle. The healing was very slow, and the joint was somewhat tender and weak some fifteen months after the accident, and, according to the doctor, the pain and loss of function will probably continue to some extent permanently.

There are some fifteen assignments of error, but they raise for our consideration only four serious questions of law, which we shall consider in their order.

█ The action was filed by J. G. Lindsay and Emma Lindsay, his wife. J. G. Lindsay died while the matter was pending in the trial court, and his surviving wife, who was the person actually injured, was appointed administratrix of his estate, and in due time moved to have herself, as administratrix, substituted as a party plaintiff for her deceased husband. This was done over the objection of defendant. It is urged by the latter that the damages sought to be recovered by this action are community property, under the rule laid down by this court in *City of Phoenix* v. *Dickson,* 40 Ariz. 403, 12 Pac. (2d) 618, and that we have held in the case just cited that the wife cannot maintain an action for personal injuries sustained by her during coverture, but that it must be brought by the husband as agent of the community, perhaps joined by the wife. From this premise, it is argued that when the husband died, the right of action itself ceased under the common-law rule, which, it is claimed, has not been modified by statute so far as cases of this kind are concerned.

We reaffirm the rule of law laid down in the Dickson case, *supra,* to the effect that the proceeds of the action in a case of this kind are community property, and that the husband is a necessary plaintiff in the action, but we think defendant has overlooked the

reason for the rule and the capacity in which he is plaintiff. It is not because a *cause* of action ever existed in him, for that belonged to the person actually injured. As was said in *C. B. & Q. R. Co.* v. *Dunn,* 52 Ill. 260, 4 Am. Rep. 606, the injury did not accrue to the husband; "it was wholly personal to the wife. It was her body that was bruised; it was she who suffered the agonizing, mental and physical pain." The husband merely *represents* the community as a guardian would represent a minor child; he has no more individual and personal cause of action than a guardian, and his death no more abates the cause of action than the death of a guardian would destroy the cause of action of his ward. We think the trial court, after the death of the husband, properly permitted the administratrix of his estate to be substituted as a party plaintiff. *Gomez et al.* v. *Scanlan et al.,* 2 Cal. App. 579, 84 Pac. 50.

The second question is the vital one in the case. It is whether defendant's conduct in maintaining the stairs, down which plaintiff fell, in the condition as to light in which we must assume it was from the evidence in the case, was negligence. There is no contention that there were any defects in the construction of the lounge, the lavatory, or the stairs; the only negligence alleged being that they were insufficiently illuminated. It must be borne in mind that the place where plaintiff was injured was one for public entertainment, maintained by defendant, and that she was there at its invitation. It was, therefore, its duty to maintain the place in a reasonably safe condition for its invitees to visit. There are a large number of cases cited by both plaintiff and defendant as bearing on this question. It would extend this opinion to a far greater length than would be of any value as a future precedent to discuss each

of these cases. While on their face there may appear to be some conflict, we are of the opinion, after carefully reading and analyzing them, that the conflict is more apparent than real, and that the rule to be drawn from an overwhelming number of the cases cited by both parties may be stated as follows: ''The owner of a public place of entertainment must maintain all parts of such place, which the public is impliedly invited to use, so lighted that *under the circumstances of the particular case* they are reasonably safe for a visitor to use.'' *Broadston* v. *Beddeo Clothing Co.,* 104 Neb. 604, 178 N. W. 190; *Wilson* v. *Evangelical Lutheran Church,* 202 Wis. 111, 230 N. W. 708; *Maran* v. *Peabody,* 228 Mass. 432, 117 N. E. 847; *Tyler* v. *F. W. Woolworth Co.,* 181 Wash. 125, 41 Pac. (2d) 1093; 62 C. J., p. 869, and notes. It is obvious that the kind and amount of lighting necessary will depend on the nature of the place involved and the character of the persons who are invited to patronize it, and that unless we can say, as a matter of law, that the lighting was sufficient in quantity to make it safe, it is a question of fact for the jury in each particular case as to whether the condition in which it was maintained constituted negligence which was the proximate cause of the injury. In the cases cited by defendant which held no liability existed, the result was almost invariably reached by the conclusion of the court that the evidence showed *that under the circumstances* the lighting was sufficient, or else that plaintiff was guilty of contributory negligence. We are of the opinion, after examining the evidence in regard to the condition of the lounge and lobby, that we cannot say, as a matter of law, that it was so lighted that it was reasonably safe for plaintiff to use, and that the jury was not justified in finding the lack

of sufficient light was the proximate cause of plaintiff's injury.

It is contended, however, that even assuming the light was not sufficient, plaintiff contributed to her own injury by wearing shoes which were dangerous for a woman of her age and condition, and that the condition of those shoes contributed to her fall. Section 5, article 18, of the Constitution of Arizona, reads as follows:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

We have held that this applies to all cases where contributory negligence is a defense, and that unless the alleged negligence of the plaintiff is the sole proximate cause of the injury, the question as to whether any particular act is contributory negligence is for the jury. We certainly cannot say from the record that the condition of plaintiff's shoe, even assuming all that is said in regard thereto by defendant to be true, was the sole proximate cause of the accident. The evidence, therefore, sustains the verdict and judgment.

The next question is whether the court erred in refusing to allow the manager of the theater to testify whether he had ever known of any other accident at the place on account of defective lighting. The question of whether testimony is admissible that other accidents have occurred at a particular place, is one on which the courts disagree. We think the majority and the better rule is that it should not be permitted. If, under our system of law, all matters, direct and collateral, which might affect the triers of fact were permitted to be placed before them, as is done under some of the continental systems, such

evidence would doubtless be admitted; but so long as we maintain the theory that the proper method of trying an action is to confine the evidence to controverted issues directly affecting the cause of action, we think that to allow the question of other accidents to enter the case would be inconsistent with our theory of law. The reason for the rule is well set forth in *Anderson* v. *Taft*, 20 R. I. 362, 39 Atl. 191, 192, as follows:

"There are cases which, expressly or impliedly, sanction the defendant's contention that the testimony is competent evidence on the question of negligence. . . . But the weight of authority, and, as it seems to us, the better reasons, support the opposite view. . . . If the defendant had been permitted to put in the testimony, the plaintiff would have been entitled to rebut it by testimony that accidents had happened within the 20 years. The defendant might then have shown that the accidents were caused, not by the defective condition of the highway, but because of the want of due care on the part of the traveler. Apart from the consideration that other accidents would be *res inter alios acta* as to the plaintiff, it is apparent that such testimony, could the parties be prepared to meet it, might introduce into the case numerous collateral issues bearing only remotely on the main issue, which would tend to greatly protract the trial, distract the attention of the jury from the issues involved in the suit, and impose great and unnecessary expense on the parties."

The last question is whether the court erred in giving the following instruction to the jury:

"The mere fact that plaintiff, Emma Lindsay, fell down the steps leading from the ladies' room in defendant's theatre, if she did fall, is no evidence whatever that such fall was due to her failure to exercise ordinary care for her safety."

It is contended that this is a comment on the evidence. Instructions must always be considered as a

whole and not by taking therefrom isolated passages. *Gerrard Co. v. Fricker,* 42 Ariz. 503, 27 Pac. (2d) 678. While the instruction as quoted was undoubtedly unhappily worded, yet, in view of all of the instructions, we think the jury could not have been misled thereby, and that it is a proper case for the application of section 22, article 6, of the Constitution.

There being no reversible error appearing on the face of the record, the judgment is affirmed.

McALISTER and ROSS, JJ., concur.