HOLLIS CLARK, Plaintiff-Appellant, *v.* CRANE CARRIER CO., a/k/a Maxi Carrier Crane Co., Defendant-Appellee.

First District (3rd Division)   No. 77-502

Opinion filed March 7, 1979.—Rehearing denied April 16, 1979.

James J. Reidy, Ltd., of Chicago (Alan M. Polikoff and Cary N. Polikoff, of counsel), for appellant.

French & Rogers, of Chicago (Richard G. French and Timothy G. Keating, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

A crane carrier, manufactured and distributed by the defendant, Crane Carrier Company, was purchased by the plaintiff's employer. The carrier was designed for use as the base for a crane. The plaintiff's employer mounted a crane upon the carrier and employed the plaintiff to operate the crane. The plaintiff did that for almost 5 years until he fractured an ankle and tore ligaments in alighting from the carrier.

The plaintiff alleged that the defendant as the manufacturer was strictly liable in tort for his injury because the carrier was either defectively designed or a defective product. At the close of the plaintiff's case, the trial judge allowed the defendant's motion for a directed verdict. The issue to which this appeal is addressed is whether the trial judge erred in directing a verdict instead of allowing the jury to decide whether (i) the carrier was unreasonably dangerous, and (ii) the plaintiff by continuing to use the carrier assumed the risk of that danger.

The carrier had no steps and nothing was affixed to enable a person to get on or off. Plaintiff's method of dismounting was to step on a front wheel and then jump to the ground.

Plaintiff was injured alighting from the carrier in his usual way. On the day he was injured, the left front tire was slightly off the ground because the carrier was on an incline. When the plaintiff stepped on the tire it turned and he fell to the ground. The plaintiff's theory is that the tire spun because the carrier was manufactured without front wheel brakes and with a single axle for the front wheels, and the left front wheel was slightly elevated from the ground when he stepped on it. In addition, the plaintiff alleges that the carrier was defective in that it failed to provide safe means of ascent to and descent from the cab.

The plaintiff testified he was aware of the condition of the carrier and considered it unsafe for lack of "safety steps." He conceded that until the accident he had encountered no difficulty getting on or off the carrier, that he had complained to his foreman about the condition of the carrier, and that he knew there were no brakes on the front wheels.

The defendant's position is that the carrier was not unreasonably dangerous, and that in any event, the plaintiff assumed the risk by continuing to use the equipment knowing of the danger presented by the omission of steps.

The starting point of our analysis of the propriety of the directed verdict is the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504): A motion for a directed verdict in a jury trial should be allowed only where the evidence, viewed in its aspect most favorable to the opposite party, so overwhelmingly favors the moving party that no contrary verdict could ever stand. (*Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 36, 382 N.E.2d 232.) In *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57, 349 N.E.2d 399, the court explained the *Pedrick* rule as having been "designed to prevent a trial judge from assuming the duties of the trier of fact in a jury case."

The defendant concedes that the carrier was designed with "safety steps," but that the defendant failed to affix them. There was evidence that without steps, getting on and off the carrier was dangerous. The defendant argues, however, that if the plaintiff or his employer had requested "safety steps," the defendant would have supplied them. A danger is no less unreasonable simply because the one responsible for it stands ready to correct the defect if someone notices it before an injury occurs. A person cannot shift his strict product liability to the users of his product by requiring them to recognize and correct his mistakes. (See *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 85, 319 N.E.2d 232.) Thus, the defendant's acknowledgement that the carrier

lacked steps is enough to call for the jury to decide whether the carrier was unreasonably dangerous.

■■ Neither is a directed verdict justified in this case by the assumption of risk defense. A person who makes use of a product he knows is dangerous in disregard of the known danger assumes the risk of injury and may not recover for resulting injuries. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 426, 261 N.E.2d 305.) The test of whether a plaintiff has assumed the risk of using a product he knows to be dangerously defective is a subjective one: the user's—rather than the reasonably prudent person's—knowledge, understanding, and appreciation of the danger must be assessed. This is ordinarily a question for the jury (*Williams*, at 430); and the age, experience, knowledge, and understanding of the plaintiff are to be considered by the jurors in reaching their decision. *Troszynski v. Commonwealth Edison Co.* (1976), 42 Ill. App. 3d 925, 932, 356 N.E.2d 926.

■■ ■ Assumption of risk in a products liability action is an affirmative defense, and the burden is on the party asserting it. (*Karabatsos v. Spivey Co.* (1977), 49 Ill. App. 3d 317, 322, 364 N.E.2d 319.) The defendant must prove that the user, knowing of the product's dangerous condition, deliberately and unreasonably exposed himself to the danger, or that the defect and danger were so open and obvious that the user must have comprehended them. (*Ruggeri v. Minnesota Mining & Manufacturing Co.* (1978), 63 Ill. App. 3d 525, 530, 380 N.E.2d 445.) Assumption of risk has been described as requiring proof of a deliberate decision by the user to encounter a known risk, or of willingness on the part of the injured person to take a chance. *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 989, 360 N.E.2d 440.

The plaintiff in this case obviously knew there were no steps to the cab, and he acknowledged that their absence made the carrier unsafe. This fact alone does not, however, necessarily lead to the conclusion that the plaintiff assumed whatever risk was involved, or that he appreciated the risk which caused his injury.

The plaintiff's experience in stepping on the front wheel in getting off the carrier undoubtedly gave him an appreciation of the danger of slipping off the tire when because of rain, snow, sleet, or an accumulation of mud, footing on the tire might be insecure. The plaintiff's injury was caused, however, by something more than the lack of "safety steps" for use in getting off the carrier, or the condition of the tire's surface on the day of the accident. The jury could have found that the plaintiff fell because the front wheels were free moving when they were slightly off the ground, and when stepped upon would spin. The jury could also have found that the front wheels were free moving when off the ground

because each of the front wheels was on a single axle and therefore not stabilized by the other wheel, and there was no braking system controlling the front wheels. The absence of safety steps made these aspects of the carrier's design relevant to the plaintiff's injury. The evidence did not so overwhelmingly show that the plaintiff was aware of and appreciated all the circumstances which may have combined to cause his injury, and still deliberately decided to chance what might happen when he stepped on the front wheel, that a contrary conclusion could not have been reached by the jury.

Plaintiff could have assumed not only that the lack of steps was deliberate, but that the rest of the carrier was designed to compensate for their omission. The evidence does not show that the plaintiff understood and appreciated that the front wheels, an obvious way of descent from a stepless cab, had been designed on the assumption they would not be used for that purpose, and consequently were devoid of safeguards to protect a person who did step on a wheel in getting off the carrier. Viewing in its aspect most favorable to the plaintiff the evidence that the carrier was delivered without steps together with the evidence that the front wheel could spin freely when slightly off the ground, we believe that a jury could properly have decided in favor of the plaintiff.

Because the issues of the unreasonably dangerous condition of the carrier and assumption of risk should have been left to the jury, this case must be reversed and remanded for retrial. In reaching this conclusion we have reviewed *Fore v. Vermeer Manufacturing Co.* (1972), 7 Ill. App. 3d 346, 287 N.E.2d 526, and *Ralston v. Illinois Power Co.* (1973), 13 Ill. App. 3d 95, 299 N.E.2d 497, which the defendant strongly emphasizes. In both those cases, the plaintiff, who was experienced in dealing with trenching equipment that caused his injury, admitted he knew the course of conduct he was pursuing was dangerous; and the courts concluded as a matter of law that the plaintiff had assumed the risk of injury. But, in both cases the evidence was much clearer that at the time of the accident the plaintiff understood and appreciated the danger to which he was subjected than the evidence here is that the plaintiff realized he might be thrown to the ground because the wheel he stepped on to get off the carrier would spin.

Judgment reversed and remanded for a new trial.

McNAMARA and JIGANTI, JJ., concur.