MELVIN E. DARROUGH, Plaintiff-Appellant, *v.* WHITE MOTOR COMPANY, Defendant-Appellee.

Fourth District No. 15380

Opinion filed August 16, 1979.

James Walker, Ltd., of Bloomington (James R. Wylder, of counsel), for appellant.

Costigan & Wollrab, of Bloomington (Paul R. Welch, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff Melvin E. Darrough appeals from April 21, 1978, and November 22, 1978, orders of the circuit court of Woodford County respectively entering judgment on a jury verdict in favor of defendant White Motor Company and against plaintiff, and denying his post-trial motion. He had sued for damages for personal injuries incurred on August 8, 1975, when he fell while dismounting from the cab of a 1974 Road Commander I truck tractor manufactured and sold by defendant. The action was brought on a theory that defendant was strictly liable in tort for a defective design of the ingress-egress mechanisms of the vehicle which was a proximate cause of plaintiff's injuries.

Plaintiff asserts on appeal that the trial court erred in (1) denying his request for a new trial based upon newly discovered evidence, (2) prohibiting his taking a post-trial discovery deposition to obtain information in support of the foregoing request, (3) refusing to direct a verdict in his favor as to defendant's pleaded affirmative defense of assumption of the risk, and (4) permitting defendant to introduce evidence purporting to show that similar injuries had not occurred from the use by others of truck tractors with the same ingress-egress system as that of the one from which he fell.

Plaintiff maintained that the design of defendant's Road Commander I was defective because (1) the access ladder on the side of the cab was placed too far behind the doorsill, (2) the distance between the steps of the ladder was not uniform, and (3) no adequate hand hold was provided. Evidence was presented that for a cost of about $75 per vehicle, a recessed step on the driver side directly below the door could have been provided. At the time of his injury, plaintiff dismounted the cab of the tractor placing his left foot on the front left tire which was below the door rather than reaching around with that leg and attempting to place his left

foot on the access ladder. He testified that he fell when his foot slipped off the tire and he lost his grip on the grab bar.

The first two errors cited by plaintiff on appeal are related. Robert White, manager of plaintiff's employer's truck terminal but in no way connected to defendant, White Motor Company, was the last witness for the defense. During a pretrial discovery deposition White had been asked whether prior to the August 8, 1975, occurrence, plaintiff had complained of his back, the area of his body injured by his fall. White responded:

> "Yes * * * he was thrown by a horse. * * * I didn't spend a whole lot of time looking for it [an office report] * * *. I don't know whether he broke his hand or broke a finger or something, but one weekend not too much before that he was thrown by a horse and he complained about his back quite a bit. I couldn't find anything on the horse deal as to exactly when it happened * * *. In my mind it [the horse injury] wasn't too much before that [the August 9 fall from the truck]."

The witness had also stated that he thought there had been some treatment for the hand but he could not even remember which hand it was. At trial, the same witness testified that plaintiff had appeared at his office between July 21 and July 28, 1975, with a cast on one of his hands and stated that his hand had been injured in a fall from a horse. Defendant argued to the jury that plaintiff's fall could be explained by a weakness in plaintiff's hand having caused him to lose his hold on the grip bar.

In support of his request for a new trial, plaintiff supplied an affidavit of an employee of the physician who treated him for his fall from the horse. It was accompanied by bills indicating that treatment began on April 10, 1975, and ended in early May of that year with the cast being removed on April 28, 1975. An affidavit of plaintiff's attorney stated that during an interview on June 20, 1978, that physician stated that in his opinion plaintiff would have had no weakness or disability in his injured hand by August 8, 1975. A second affidavit of plaintiff's attorney indicated that White had indicated to that counsel an antagonism toward him prior to his being called as a witness at trial.

■■■ Plaintiff asserts that (1) he was taken by surprise at trial because of the detail of White's testimony, and (2) the evidence described in the affidavits previously mentioned reveal that White's testimony was false. A party to a civil case surprised at trial by testimony relating to a material fact which could not be foreseen is sometimes entitled to a new trial if newly discovered evidence meets the surprise evidence. (*People v. Cotell* (1921), 298 Ill. 207, 131 N.E. 659; *Blake v. Ewers* (1950), 341 Ill. App. 382, 91 N.E.2d 75 (abstract).) However, we do not deem the testimony of White to constitute surprise. In his deposition, he had indicated that he

thought plaintiff's fall from the truck occurred soon after his fall from the horse. Plaintiff's counsel knew of White's hostility to him at the time White testified but did not attempt to impeach him. The trial court did not err in refusing to grant a new trial on the basis of newly discovered evidence.

■■ Supreme Court Rules 201 through 215 (58 Ill. 2d R. 201-215) providing for discovery in civil cases are silent as to whether discovery depositions may be taken or other discovery devices used post trial. No case concerning this question has been called to our attention. The discovery here was sought in support of plaintiff's request for new trial because of newly discovered evidence. As we have previously determined, insufficient surprise was alleged to validate that request. Under those circumstances and without deciding whether post-trial discovery is ever permissible, we conclude that the trial court ruled properly here.

■■ Plaintiff contends that at the close of the evidence a verdict should have been directed in his favor as to defendant's affirmative defense of assumption of the risk because of a lack of any evidence to support the defense. *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305, is the seminal case in this State concerning the doctrine of assumption of the risk in strict liability defective product cases. The court there described the test to be applied in determining whether a user had assumed the risk as a subjective one going to the actual "knowledge, understanding and appreciation of danger" of the user rather than that of the reasonably careful person, and stated that the issue was usually for the trier of fact. The court stated that a user's testimony of his mental state is not conclusive and should be considered together with his "age, experience, knowledge and understanding, as well as the obviousness of the defect and the danger it poses." 45 Ill. 2d 418, 430-31, 261 N.E.2d 305, 312.

In *Brown Manufacturing Co.*, the plaintiff was injured when a ditching machine he was operating bucked, knocking him to the ground and running over him. Plaintiff had been operating the machine from the rear and the bucking occurred when digging teeth caught on an underground pipe. He had read at least parts of a manual which warned that the drive belts on the machine should not be adjusted too tightly because of the need for them to slip when sudden shock occurred. Evidence also indicated that plaintiff stood on the end of the machine in order to control the level of the machine even though the position was awkward and was one from which the plaintiff could not see how the machine was digging. The plaintiff was shown to be experienced in the operation of machinery and to have checked the instant machine before using it. From this evidence, the supreme court concluded that a jury question as to his assumption of the risk existed.

■■ Plaintiff here was 40 years old when injured, had 10 years experience as a truck driver and had driven a Road Commander I for over a year making local deliveries which required continuous climbing in and out of the cab. If the defect was the position of the access ladder, the fact that plaintiff placed his left foot on the tire rather than the ladder would be an indication that he realized that the position of the ladder was unsafe. Furthermore, the lack of a step beneath the cab, the difficulty involved in dismounting from the cab, and the likelihood that a foot placed on the tire might slip were all obvious. By the standards of *Brown Manufacturing Co.*, a jury question on the defense of assumption of the risk was presented here, too. See also *Clark v. Crane Carrier Co.* (1979), 69 Ill. App. 3d 514, 387 N.E.2d 871.

Defendant's introduction of evidence that injuries had not occurred from the use of other trucks with the same ingress-egress system was preceded by the trial court's pretrial denial of plaintiff's *in limine* motion that defendant be precluded from presenting this evidence. A retired engineer employed by defendant in truck design from 1951 to 1974 testified that in 1967 he wrote to Liberty Mutual Insurance Company, asking if they had reports of ingress-egress injuries to drivers from use of defendant's 7400 series which had an ingress-egress system like that of the cab in issue here, and that as of the time of trial he had received no reports of such injuries. Plaintiff asserts that the testimony lacked a proper foundation and that, in any event, lack of injuries from prior use of similar equipment is not probative of lack of defect in the instant equipment and is thus inadmissible.

Plaintiff argues that no proper foundation was laid for the evidence because it was not shown that all of the White Commander I series cabs had an access system like the one in issue. However, the inquiry of the engineer concerned defendant's 7400 series and evidence introduced indicated that their access apparatus was the same as that of the tractor from which plaintiff fell.

The question of whether, in defense of a charge of strict liability defective product based on defective design, a manufacturer may show evidence of nonoccurrence of injury from similar products has not been directly decided in Illinois. In *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1974), 21 Ill. App. 3d 510, 316 N.E.2d 255, *aff'd on other grounds* (1975), 62 Ill. 2d 77, 338 N.E.2d 857, cited by plaintiff, a trial court's refusal to allow a manufacturer to introduce evidence of nonoccurrence of similar incidents from the use of numerous other customers of the same product was held to be proper. However, the opinion noted that the claimed defect was not one of design but involved the setting of a pump valve which would not necessarily be the same on each pump. In *Vlahovich v. Betts Machine Co.* (1968), 101 Ill. App. 2d

123, 242 N.E.2d 17, *aff'd* (1970), 45 Ill. 2d 506, 260 N.E.2d 230, a judgment for a defendant in a strict liability defective product case was set aside for several reasons including the trial court's refusal to allow a witness to testify to similar occurrences resulting from the use of the product. The appellate court stated, "Evidence of similar occurrences *or the lack thereof* involving like instrumentalities or agencies under similar circumstances is relevant and admissible in the determination of such issue." (Emphasis added.) (101 Ill. App. 2d 123, 128, 242 N.E.2d 17, 19.) Similarly, in *Walker v. Trico Manufacturing Co.* (7th Cir. 1973), 487 F.2d 595, a strict liability defective product case, dictum indicated that if a proper foundation was laid, evidence of lack of injuries resulting from use of identical equipment was admissible.

A leading text on evidence, in speaking of tort cases based both upon negligence and strict liability for defective product, has stated:

> "* * * It would seem that if other accidents and injuries are admissible where circumstances are similar, in the judge's discretion, to show such matters as the existence of a particular defect or condition, or that the injury sued for was caused in a certain way, or that a situation is dangerous, or that defendant knew or should have known of the danger, then logically it would follow that proof of the absence of accidents during a period of similar exposure and experience, would generally be receivable to show the nonexistence of these facts." (McCormick, Evidence §200, at 476 (2d ed. 1972).)

See also 63 Am. Jur. 2d *Products Liability* §17 (1972); Hursch & Bailey, 1 American Law of Products Liability 64 (2d ed. 1964).

The appellate court opinion in *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* emphasized that the defect involved there was as to a pump valve setting and not of design. Under those circumstances other pumps of the same design would not be particularly likely to have the same defect. Here, the issue was whether the design was defectively dangerous. Evidence that many others had dismounted trucks of similar design without incident would bear upon that issue. At least in such cases, we agree with the dictum of *Vlahovich, Walker,* and the cited texts that evidence of lack of other injuries resulting from use of similar equipment has relevance and is admissible. The trial court properly denied the *in limine* motion here.

Finding the questioned trial court rulings to have been proper, we affirm.

Affirmed.

MILLS and TRAPP, JJ., concur.