700 P.2d 819

**Jerry JONES and Sandra Jones, husband and wife, Plaintiffs/Appellees,**

v.

**PAK–MOR MANUFACTURING COMPANY, Defendant/Appellant.**

No. 17412–PR.

Supreme Court of Arizona,
En Banc.

Jan. 17, 1985.

Davis, Siegel & Gugino by Barry M. Davis, Tucson, for plaintiffs/appellees.

Kimble, Gothreau, Ryan, Nelson & Cannon, Jones, Dickerman, Nuckolls, Edwards & Smith by William W. Edwards and William Kimble, Tucson, for defendant/appellant.

FELDMAN, Justice.

Jerry Jones (plaintiff) was injured on January 27, 1979, while working on a machine manufactured by Pak-Mor Manufacturing Company (defendant). In the product liability action which followed, plaintiff alleged improper design and sought recovery on theories of negligence and strict liability. Before trial, plaintiff moved to exclude all evidence of the absence of prior, similar accidents. The trial court granted plaintiff's motion, ruling that such evidence was inadmissible under Arizona law. After verdict and judgment for plaintiff, defendant appealed, claiming, *inter alia*, that the exclusion ruling was in error. The court of appeals affirmed. *Jones v. Pak-Mor Manufacturing Co.*, 145 Ariz. 132, 700 P.2d 830 (1984). Defendant petitioned this court for review. We have jurisdiction. Ariz. Const. art. 6 § 5(3); Rule 23, Ariz.R. Civ.App.P., 17A A.R.S. We accepted review only on the issue pertaining to admissibility of evidence of the absence of prior accidents.

## FACTS

The facts of this case are set forth fully in the opinion of the court of appeals. We state here only those facts necessary for the determination of the issue upon which we granted review.

Plaintiff was employed by SCA Services of Arizona, Inc. On January 27, 1979, plaintiff was injured while working on a side-loading refuse compaction and collection machine on a route serviced by SCA. He had been hired only three days before and had received limited instructions for working on the rear-loading machine to which he was assigned for his first two days on the job. He received no instructions for working on the side-loading machine to which he was assigned on his third day of work. The driver of this vehicle also was newly hired.

The men began work at 6 a.m. The driver was given a map of the collection route, and he and plaintiff drove to an area outside Tucson where they began collecting garbage. Plaintiff was working as a helper on the driver's side of the machine, standing on the fender running board as the truck proceeded between pick-up points. Plaintiff rode with his body facing the machine. As plaintiff stood on the running board, his head was generally turned to the left, and he was looking toward the front of the machine while he held onto the grab iron attached to the side of the machine. Each side of the machine contained two doors which were open to receive the garbage collected at various points and emptied into the compactor.

Early in the morning, the truck entered an alley, stopped so that the helpers could pick up several cans of garbage, and then continued down the alley along a fence line. The alley was less than ten feet wide, while the truck was about eight feet wide. Plaintiff, riding on the running board, was not looking forward until just before the alley curved, when he looked up and saw the fence "coming toward" him. The driver turned the curve sharply, and plaintiff was caught between the fence and the vehicle. Plaintiff's left leg was seriously injured.

Plaintiff filed an action against his employer, a co-worker, the manufacturer of the truck to which the compactor was attached, and Pak-Mor, the company which built the compactor. Before trial, all claims against defendants other than Pak-

Mor were settled or dismissed. Trial proceeded against Pak-Mor on counts of negligence and strict liability.

The evidence at trial indicated that the Pak-Mor garbage compacting machine comes in several series, differing mainly in the capacity of the compactor. The compactors are designed so that the workmen may jump off the truck, grab garbage cans, empty them into the compactor, and ride on the compactor itself as the truck pulls the machine between collection points. As they ride, the workmen stand on a running board on the side of the truck-compactor. The standing space for the worker is reduced by the cylindrical shape of the compactor, so that only three and one-half to four inches of space is available within the actual width of the compactor. A.R.S. § 28–1002(A) limits the outside width of any vehicle, including its load, to eight feet; therefore, the design of the running board and compaction machine forced plaintiff's body to "extend beyond the protected, lawful width of the vehicle." (*Jones v. Pak-Mor*, 145 Ariz. at 123, 700 P.2d at 821.)

The Pak-Mor compactor was originally designed in 1947. The machine on which plaintiff was riding at the time of the accident was a 1972 model. The parties disagree with respect to whether the redesign in 1972 changed the design in any way relevant to the case at bench. Because we consider the propriety of the exclusion of evidence offered by defendant, we view the record on this question in the light most favorable to admission of that evidence. Taken in that light, the evidence indicates that no material change in the design occurred and that the compactor on which plaintiff was riding was a model which had been used without relevant change for a period of twenty-six years.

At the beginning of trial, plaintiff moved to exclude any evidence that the machine had been in use for twenty-six years without report of similar accidents. In opposing the motion, defendant offered to prove that the product had been designed and put into use in 1947, that the relevant portion of the design had not been changed, that

thousands of machines with the same design had been sold, that they had been used under widely varying conditions, and that there had been no report of claims to or against defendant based on any injury sustained in a manner similar to that alleged by plaintiff. Defendant was prepared to offer this evidence through the testimony of its president. It argued that the evidence was relevant to show that the design was not defective, that the product was not unreasonably dangerous, and that the defendant had no notice of any defect or danger.

While recognizing that there is authority from other jurisdictions supporting the admission of evidence relating to the absence of prior accidents in both negligence and strict liability actions, both the trial judge and the court of appeals correctly noted the existence of Arizona decisions "admit[ting] evidence of prior accidents, but exclud[ing] evidence of the absence of prior accidents." (*Jones v. Pak-Mor*, at 123, 700 P.2d at 821.) As the court of appeals further noted, in Arizona the rule is "applied mechanically." (*Id.*) Although the trial court has discretion to admit evidence of prior accidents, the rule relating to inadmissibility of evidence of the absence of prior accidents is a *per se* rule. *Hlavaty v. Song*, 107 Ariz. 606, 491 P.2d 460 (1971). Evidence of the absence of prior accidents under similar conditions is inadmissible to prove lack of defect, lack of danger, or similar issues. *Id.* But see *Rayner v. Stauffer Chemical Co.*, 120 Ariz. 328, 585 P.2d 1240 (App.1978) (holding such evidence admissible to show characteristics of the product with respect to its capacity to cause certain types of injury).

The rule of *per se* inadmissibility was first adopted by this court in *Fox Tucson Theaters Corp. v. Lindsay*, 47 Ariz. 388, 56 P.2d 183 (1936). Defendant argues that *Lindsay* was not meant as a *per se* rule, that it is now a minority rule, that it is unsupported by logic, and that this court should reconsider it. Finding these arguments persuasive, we accepted review. Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.

## RELEVANCE

### 1. *The Basis for Rejection*

The reason given in *Lindsay* for the rule of inadmissibility was that

> ... it is apparent that such testimony, could the parties be prepared to meet it, might introduce into the case numerous collateral issues bearing only remotely on the main issue, which would tend to greatly protract the trial, distract the attention of the jury from the issues involved in the suit, and impose great and unnecessary expense on the parties.

*Fox Tucson Theaters Corp. v. Lindsay*, 47 Ariz. at 395, 56 P.2d at 186, quoting from the seminal case of *Anderson v. Taft*, 20 R.I. 362, 39 A. 191, 192 (1898). A second reason sometimes given for the *per se* rule of inadmissibility in some of the earlier literature was that

> Litigants should be protected against surprise.... [S]afety-history evidence is not closely confined in time, and sometimes not in space. Therefore, opposing counsel may be unprepared to meet fraudulent, partial, or mistaken testimony about accidents other than the principal one, or about long periods of safe use.

Morris, *Proof of Safety History in Negligence Cases*, 61 Harv.L.Rev. 205, 210 (1948). A final consideration was that jurors would be misled or prejudiced by such evidence. Thus, jurors impressed by the defendant's good record might be swayed in his favor and fail to see that he had lowered his standards. *Id.* at 210–11.

While some of these objections may still be viable, recent cases indicate that the rule of *per se* inadmissibility is "manifestly incompatible with modern principles of evidence." *Simon v. Town of Kennebunkport*, 417 A.2d 982, 985 (Me.1980). In *Simon* the court rejected a *per se* rule of inadmissibility of evidence of other accidents and stated:

> Whatever the continued vitality ... of an absolute prohibition against other-accident evidence, it is clear that such a rule

did not survive the adoption of our new Rules of Evidence....

*Id.* at 986; *see also Sturm v. Clark Equipment Co.*, 547 F.Supp. 144, 145 (W.D.Mo. 1982), *aff'd*, 732 F.2d 161 (8th Cir.1984) (noting that under the Federal Rules of Evidence the absence of prior accidents is "relevant and admissible, assuming an adequate foundation is established regarding comparability of circumstances").

We note also that the rule of *per se* inadmissibility, adopted in *Fox Tucson Theaters Corp. v. Lindsay* and followed in other cases, has been criticized by most, if not all, evidence scholars. *See McCormick on Evidence* § 200 at 590–92 (E. Cleary ed. 1984); M. Udall & J. Livermore, *Arizona Law of Evidence* § 85 at 190 (2d ed. 1982); 2 Wigmore, *Evidence* § 443–44 at 528–32 (Chadbourn rev. 1979). Observing that few recent decisions have applied a general rule of exclusion, McCormick has criticized the lack of symmetry in the rule allowing a judge discretion to admit proof of other accidents but not proof of the absence of other accidents:

> One might think that if proof of similar accidents is admissible in the judge's discretion to show that a particular condition or defect exists, or that the injury sued for was caused in a certain way, or that a situation is dangerous, or that defendant knew or should have known of the danger, then evidence of the absence of accidents during a period of similar exposure and experience likewise would be receivable to show that these facts do not exist in the case at bar. Indeed, it would seem perverse to tell a jury that one or two persons besides the plaintiff tripped on defendant's stairwell while withholding from them the further information that another thousand persons descended the same stairs without incident.

McCormick, *supra*, § 200 at 590. Similarly, Wigmore has rejected as unsound a fixed rule of admissibility or inadmissibility, favoring instead a general rule of judicial discretion:

It is much wiser and more practical to leave the possible inconvenience to be determined by the tribunal best fitted to determine it, the trial court, and to sanction the reception of all such relevant evidence subject to this exclusionary discretion based on inconvenience.

2 Wigmore, *supra*, § 444 at 532.

Whatever the debate waged in the courts and by the authors of articles and treatises, we believe that our position should be compatible with the rules of evidence which we adopted in 1977. A blanket rule of inadmissibility is essentially a rule of relevancy. As a matter of law it declares the evidence inadmissible either because it lacks probative value with regard to the issues presented or because its probative value is outweighed by the danger of prejudice and the problems associated with inquiry into collateral matters, such as time wasted, expense, and the like. *See Simon v. Town of Kennebunkport*, 417 A.2d at 986.

### 2. The Rules of Evidence

■ We turn, then, to an examination of the rules of evidence. Rule 401 [1] defines "relevant evidence" as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The essence of a negligence action based on defective design is that defendant distributed a product when it was reasonably foreseeable that its design presented an unreasonable risk of harm. W. Prosser & W. Keeton, *The Law of Torts* §§ 96, 99 at 688–89, 698–702 (5th ed. 1984). In a strict liability action, the plaintiff must prove that the product was defective and unreasonably dangerous. Restatement (Second) of Torts § 402A. The factors which bear upon this determination in a defective design case were considered by us in *Byrns v. Riddell, Inc.*, 113 Ariz. 264, 550 P.2d

1065 (1976). One of those factors is the likelihood that the product, as designed, will cause serious injury. *Id.* at 267, 550 P.2d at 1068. Thus, in product liability actions based on defective design, relevant issues may include whether defendant should have foreseen the potential for danger from use of the product as designed, whether a defect existed, and whether a particular danger was unreasonable—including the likelihood of its causing serious injury. Safety-history, including the presence or absence of prior accidents under similar use, is evidence which may make these ultimate facts "more probable or less probable than [they] would be without the evidence." Rule 401, Ariz.R.Evid., 17A A.R.S. *See, e.g., Schwartz v. American Honda Motor Co.*, 710 F.2d 378, 382 (7th Cir.1983); *Darrough v. White Motor Co.*, 74 Ill.App.3d 560, 565, 30 Ill.Dec. 467, 393 N.E.2d 122, 125–26 (1979); *Reiger v. Toby Enterprises*, 45 Or.App. 679, 682–83, 609 P.2d 402, 404 (1980); *McCormick, supra*, § 200. There can be no doubt that evidence of safety-history is relevant.

Once evidence is shown to be relevant, Rule 402 provides that it is admissible unless "otherwise provided" by constitutional provision, statute, or rule. Several rules of evidence provide for *per se* inadmissibility, subject to enumerated exceptions. *See* Rules 404 and 407–411.[2] No specific rule of evidence mandates rejection of evidence of safety-history. The one rule that applies to safety-history evidence is Rule 403, which covers the concerns expressed by this court in *Fox Tucson Theaters Corp. v. Lindsay, supra*, and described by Wigmore as "considerations of auxiliary probative policy." 2 Wigmore, *supra*, § 443 at 528. Rule 403 permits exclusion of evidence when

[a]lthough relevant, ... its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

---

1. Specific references to the Arizona Rules of Evidence will be noted throughout this opinion as "Rule ——."

2. These rules declare inadmissible evidence of character, subsequent remedial measures, compromise and offers of compromise, payment of medical and similar expenses, offers to plead and withdrawn pleas, and existence of liability insurance.

the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403 is not a rule of *per se* inadmissibility, but one which gives the court discretion to reject relevant evidence upon the grounds stated. 1 *Weinstein's Evidence* § 403 [01] (1982). It is essentially a rule which requires the court to weigh and balance the benefit to be gained by admission against the harm which may result from admission. It is the rule applicable to evidence showing the existence of prior accidents. *Simon v. Town of Kennebunkport,* 417 A.2d at 986. It is the rule which defendant claims logically should apply to evidence of the absence of prior accidents in cases involving alleged negligent or defective design. For this proposition defendant cites a number of recent cases holding that the trial court has discretion under Rule 403 to admit evidence of the absence of prior accidents. *Schwartz v. American Honda Motor Co., Inc., supra; Sturm v. Clark Equipment Co., supra; Darrough v. White Motor Co., supra; Caldwell v. Yamaha Motor Co., supra.*

### 3. *Characterization of Evidence of the Absence of Prior Accidents*

There is little logic in the proposition that the trial court may admit evidence of other accidents but may never admit evidence of their absence. *See* McCormick, *supra,* § 200 at 590. Nevertheless, experience teaches us that the problems of prejudice, inability of the opposing party to meet the evidence, and the danger of misleading the jury are substantial. We are aware, also, that defendant's "lack of notice" of injury does not establish the fact that no injuries had occurred, and that a "long history of good fortune" may not preclude the conclusion that the product was defective and unreasonably dangerous. *Tucson Industries, Inc. v. Schwartz,* 108 Ariz. 464, 468, 501 P.2d 936, 940 (1972).

We believe that the true problem underlying the rejection of evidence of the lack of prior accidents is more evidentiary than substantive in nature. The essential na-ture of evidence of the absence of prior accidents is different from evidence of the existence of prior accidents. It is harder to prove that something did not happen than to prove that it did happen. When a witness testifies that he knows of no prior accidents, there are two possible explanations. The first is that there have been no prior accidents; the second is that there have been prior accidents but the witness does not know about them. This problem, however, is not peculiar to safety-history evidence in product liability cases. It is, we believe, a variant of the "negative evidence" problem. *See* M. Udall & J. Livermore, *supra,* § 65 at 120; 2 Wigmore, *supra,* § 664. The response of most courts to this problem has been that testimony that a witness did not see an event (knows of no prior accident) "has, in and of itself no probative force sufficient to prove that the event did not occur." *Byars v. Arizona Public Service Co.,* 24 Ariz.App. 420, 424, 539 P.2d 534, 538 (1975). *See also State v. Jeffers,* 135 Ariz. 404, 661 P.2d 1105 (1983). Generally, courts hold that such negative evidence is inadmissible, unless testimony that the witness did not see the event or does not know of it is coupled with further evidence that the witness was in such a position or has such sources of knowledge that if the event had occurred, he would have seen it or would have known about it. M. Udall & J. Livermore, *supra,* § 65 at 120; 2 Wigmore, *supra,* § 664 at 907.

All of these factors indicate the path that should be taken. If the *per se* rule is rejected, the trial court will apply Rule 403, weigh the auxiliary probative problems, and balance them against the value of the evidence. The trial judge should be aware of the difficulty of meeting an allegation that there have been no prior accidents. If a product is very widely distributed, it will be almost impossible for the plaintiff to rebut such a contention when the real issue is simply whether, among millions of users, a few each year may have used the product in a way which produced serious injuries. The trial judge must remember that where

plaintiff alleges that a particular use of the product has produced a prior injury, he is put to his proof of the specific instance. The existence of a specific prior occurrence, the question of similarity, and other questions of specific proof are all much easier to meet than the general assertion that there have been no prior accidents. These factors, then, should weigh in the trial judge's determination of admissibility under Rule 403.

Other matters also should be considered. One of these is the plain nature of the danger. An open hole in a sidewalk poses a patent, unreasonable danger to pedestrians. Evidence of the lack of prior accidents is no more than evidence that the plaintiff was the first to fall in the hole. It creates a considerable risk of misleading the jury with respect to the purpose for which the evidence is admitted. Further considerations are similarity of use and length of exposure to the particular danger. *See Darrough v. White Motor Co.*, 74 Ill.App.3d at 565, 30 Ill.Dec. at 472, 393 N.E.2d at 125. The foundation should include evidence that the product experience which the proponent seeks to prove "is so extensive as to be sure to include an adequate number of similar situations." McCormick, *supra*, § 200 at 591.

We come, then, to the important consideration of the characterization of the evidence. The character of the evidence which might be admissible is determined by the issue on which it is offered. The ultimate issue is not whether lawsuits have been filed, nor whether claims have been made, nor whether the witness is aware of any accidents. The relevance of safety-history evidence is to establish evidentiary facts from which it may be inferred that there have been no prior accidents, thus warranting the ultimate inference that the product was neither defective and unreasonably dangerous nor the cause of the injury. Thus, the proponent of the evidence must establish that if there had been prior accidents, the witness probably would have known about them. This portion of the evidentiary predicate will, in most cases, be formidable. It is not, however, insurmountable. The defendant may have established a department or division to check on the safety of its products and may have a system for ascertaining whether accidents have occurred from the use of its products. The defendant or its insurers may have made a survey of its customers and the users of its product to determine whether particular uses of the product have produced particular types of injuries. Information may have been compiled by and obtained from governmental agencies such as the Consumer Product Safety Commission, the FAA, the FDA, or the FTC. Defendant may have established a system with its insurers, distributors, or retailers whereby retail customers are encouraged to report accidents, accidents are investigated, and data is compiled. Any of these methods, or others, may produce facts with which the proponent of the evidence may establish that if there had been accidents or near-accidents when the product was used in a relevant manner, defendant probably would have learned of the information and would have it available. Thus, if the import of the evidence is no more than testimony that no lawsuits have been filed, no claims have been made, or "we have never heard of any accidents," the trial judge generally should refuse the offered evidence since it has very little probative value and carries much danger of prejudice.[3]

---

**3.** Such evidence has more direct relevance in negligence cases involving defective design than in strict liability cases. The ultimate issue of negligence in design cases revolves around the foreseeability that there was an unreasonable risk of harm in distributing the product as designed. *See ante* at 823. Defendant's knowledge of prior accidents has more direct and obvious probative value on this question because it is easier to foresee the repetition of that which has already occurred. Thus, if plaintiff has attempted to prove that there have been prior accidents and to argue that defendant knew or should have known of those accidents, then the lack of claims and reports may have direct probative value and be independently admissible. Also, evidence of the lack of reports and claims of accidents has more direct admissibility and relevance where defendant attempts to show the design danger was unforeseeable by

We are cognizant, also, that in the ordinary case (*see Fox Tucson Theaters Corp. v. Lindsay, supra*) involving the design or construction of buildings or intersections, the evidentiary predicate which we have described will militate strongly against admission of the evidence. Where, for instance, plaintiff alleges that premises were negligently designed or maintained, the mere fact that no prior accidents have been reported is incomplete. It does not tell us how many near-accidents, nor how many fortuitous escapes from injury, may have occurred, and it leaves the opponent of the evidence no method to ascertain and identify those who may have passed by the area, under what conditions, and with what risks or experience. In such a case, the scales tip strongly in favor of rejection of the evidence. However, in product design defect cases, the focus is on the inherent nature and quality of all products of similar design. If the design is "defective," then all units have the same defect. *See* R. Hursh & H. Bailey, 1 *American Law of Products Liability* § 1.21 at 66–67 (2d ed. 1974). In such cases, the accumulation of relevant data is possible if the defendant, its insurers, distributors, customers, or some governmental agency has undertaken appropriate steps to acquire and compile information on safety-history. Under such circumstances, we believe that the problem of trial preparation is manageable. Once either party learns, through appropriate discovery, of the other's intent to offer evidence of safety-history, the opponent usually will be in a position to undertake some type of discovery or investigation to meet the assertion, so long as the offer is specific and not merely "we know of no claims." In these cases, the balancing test

required by Rule 403 may well tip toward admission.

One further consideration must be examined. Plaintiff argues that the policy of product liability law should be to foster the manufacture and distribution of safe products and to discourage the distribution of unsafe products. Therefore, plaintiff maintains that we should continue to follow a policy of admission of proof of prior accidents under similar circumstances and *per se* exclusion of relevant evidence of lack of prior accidents, even though this rule has been criticized. We agree with the premise but not with the conclusion. We have recognized safety incentive as a factor in the evolution of Arizona law of product liability. *Salt River Project v. Westinghouse*, 143 Ariz. 368, 694 P.2d 198 (1984). We disagree, however, with the assumption made by the plaintiff. Safety is not promoted by giving manufacturers, sellers, and distributors an incentive to refrain from learning about their products. The present rule, providing for discretionary admission of evidence of prior accidents and automatic exclusion of evidence of the lack of prior accidents, does just that. We believe the law is better served by a rule which gives manufacturers and distributors the utmost incentive to acquire, record, and maintain information regarding the performance of their products.

We hold, therefore, that in product liability cases involving a claim of defective design, whether based on negligence, strict liability, or both, the trial court has discretion under Rule 403 to admit evidence of safety-history concerning both the existence and the nonexistence of prior accidents, provided that the proponent establishes the necessary predicate for the evidence.[4] The evidence of safety-

---

offering evidence that prior to the accident it had attempted to gather information about the safety-history of its products and had found no report or claim of untoward occurrence. Neither of these circumstances appears to have arisen in the case at bench.

**4.** We emphasize that this is a rule applicable to defective design cases and not those involving a manufacturing flaw. Cases involving a manufacturing flaw do not implicate the inherent

design or quality of the entire line of products in question, but only the quality of a particular unit or number of units of that product. In such cases, the fact that the product as a whole has a demonstrated safety-history is irrelevant. *Compare Darrough v. White Motor Co.*, 30 Ill. Dec. at 472, 393 N.E.2d at 125 with *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.*, 21 Ill.App.3d 510, 316 N.E.2d 255

history is admissible on issues pertaining to whether the design caused the product to be defective, whether the defect was unreasonably dangerous, whether it was a cause of the accident, or—in negligence cases—whether the defendant should have foreseen that the design of the product was not reasonably safe for its contemplated uses.

In the case at bench, the trial court held that evidence of the lack of prior accidents was *per se* inadmissible. The court of appeals affirmed that holding. We turn, then, to determine whether that ruling constituted reversible error.

### THE NATURE OF THE EVIDENCE OFFERED

■ At the hearing on the motion in limine preceding the trial court's ruling that evidence of the lack of prior accidents was substantively inadmissible, the defendant made the following offer of proof by avowal of counsel:

> ... the defendant would testify [by its president] that the product in question, the Pak Mor side-loading refuse compactor was initially designed and put into production in the same design and concept and mode in 1947 under the model designation AF, and in 1961 it was changed from a chain drive to a hydraulic drive, but otherwise remained in the same design configuration, that it remains in the same design configuration as of the date of this trial ...
>
> During that period of time they [the defendant] have had no reports to the manufacturer of any injuries like or the same as the injuries complaint [sic] by the plaintiff in this action....

Plaintiff argues that even if the *Fox Tucson Theater Corp. v. Lindsay* rule is abrogated, this offer of proof provided an insufficient foundation upon which to predicate error in the case at bench. Defendant argues, on the other hand, that the avowal, coupled with evidence indicating that thousands of units of the product were in use under similar circumstances for a period of approximately thirty years, is sufficient to show the nature of the expected evidence and therefore constitutes a sufficient offer of proof.

■ An offer of proof is "simply a detailed description of what the proposed evidence is." M. Udall & J. Livermore, *supra*, § 13 at 20. Defendant argues that the purposes underlying the requirement of a detailed foundational showing in the offer of proof are not enforced where, as here, the offer is challenged and refused on substantive rather than evidentiary grounds. *See id.* at 22; *Peterson v. Sundt*, 67 Ariz. 312, 318, 195 P.2d 158, 162 (1948). We agree; any requirement of further specificity, such as submitting the full testimony in verbal or written form, is excused by the lack of challenge to the foundation and by the court's rejection, on substantive grounds, of *per se* inadmissibility.

The vice in this offer of proof, however, is quite different. The offer indicates the nature of the proposed evidence. The problem is that defendant has made no showing that the testimony would be admissible even under the rule which we recognize today. Offers of proof serve a two-fold purpose:

> First, the description puts the trial judge in a better position to determine whether his initial ruling was erroneous and to allow the evidence to be introduced if he decides it was. Second, the appellate court will be able from the description to determine whether any error was harmful in the context of the case.

M. Udall & J. Livermore, *supra*, § 13 at 20–21 (footnotes omitted). We are forbidden by Ariz. Const. art. 6, § 27 to reverse for technical error and by Rule 103 of the Rules of Evidence to reverse for exclusion of evidence "unless a substantial right of the party is affected...." The probative portion of the offer in the case at bench was simply that during the period of time the product had been in use the defendant

(1974), affirmed on other grounds, 62 Ill.2d 77, 338 N.E.2d 857 (1975).

had "had no reports to the manufacturer of any injuries" similar to that sustained by plaintiff. As indicated above (*ante* at 825–826), the absence of claims and reports is not the relevant fact, nor even one which justifies an inference of the relevant fact (that there have been no accidents), absent a showing that if there had been accidents the witness would have known of them either from the system utilized to track safety-history or from the investigation made at the sources of such information. There may have been no lawsuits filed against defendant, but we have no way of knowing what workers' compensation claims were filed with appropriate administrative bodies nor any way of knowing what injuries were sustained but not pursued. In other words, we have no way to tell whether the testimony contained in the avowal, even if given by the president, would have carried convincing persuasive force, would have been admissible at all, or would have tipped the scales an iota.

On the other hand, plaintiff points out that there was evidence of at least one prior accident. While defendant attempts to distinguish the facts of that accident, we think it similar enough that it might have had some probative value, at least if defendant opened the door by alleging the lack of prior accidents. Thus, defendant's offer of proof is not that no similar accidents had occurred, but really "that they were relatively few in number." (Supplementary brief of defendant at 3.)

Although defendant was informed by the trial court's ruling that the evidence would be rejected on substantive grounds and was thereby excused from showing the trial court the nature of the testimony in detail, it was still incumbent upon defendant to make a record for appeal indicating that there was evidence available which would have been admissible, which should have been admitted, and which might have affected the verdict. Defendant's offer of proof did not indicate that there existed any evidence to warrant the inference that

the absence of claims tended to prove a lack of accidents. On this point the record is silent. Trial counsel offered no evidence of customer surveys, user surveys, safety record search, or any other fact to indicate that the absence of claims was some evidence of the absence of accidents under similar conditions of use. Nor does anything in the depositions, answers to interrogatories, or other discovery data in the file (including the portions not offered in evidence) even hint that defendant could have gone beyond the "I know of no claims and therefore believe there were no accidents" format of testimony from the president of the company.

We are not disposed to reverse unless the record clearly demonstrates facts to support the theory which would have made the evidence substantively admissible and which would indicate the probative force that the evidence would have had if admitted. Even if we were to agree with defendant that the offer of proof was a futile act because the trial judge had asserted an absolute intention to exclude the evidence on substantive grounds, certainly where a party attempts to change existing law it has the burden to make a record for appeal. That record should demonstrate that if the trial court had applied the correct principle of law, the evidence would have been admissible and probably would have carried sufficient probative value to render its exclusion prejudicial.

On the record before us, in the absence of any such showing in the offer or any hint in discovery that such facts were available, we have no way of knowing whether the desired evidence even existed. To reverse, we would have to speculate that such evidence existed, that it was available to the defendant at trial, that it was of such a nature that the trial court would have abused its discretion under Rule 403 by excluding it, and that its probative force was such that exclusion was prejudicial. In fact, we have no way of knowing whether, even after reversal, defendant could

offer the necessary evidence at retrial. We do not reverse on such speculation, but only where it is apparent on the record that the error committed probably would have affected the verdict. *Petefish v. Dawe*, 137 Ariz. 570, 577–78, 672 P.2d 914, 921–22 (1983).

We therefore affirm the judgment of the trial court. The portion of the opinion of the court of appeals which deals with ad-missibility of safety-history is vacated, the remainder of the opinion is approved.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.