[No. B069842. Second Dist., Div. Six. July 21, 1994.]

ETHEL BENSON et al., Plaintiffs and Appellants, v.
HONDA MOTOR COMPANY, LTD. et al., Defendants and Respondents.

1340

## COUNSEL

Heily & Blase and John R. Johnson for Plaintiffs and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard, Stephen T. Waimey and Armen Hairapetian for Defendants and Respondents.

## OPINION

**STONE (S. J.), P. J.**—Ethel and Walter Benson (the Bensons) appeal from the judgment entered after the jury rendered a special defense verdict in favor of Honda Motor Company, Ltd. et al. (Honda). We affirm.

### FACTS

While stopped at a red light, the Bensons' 1984 Honda Accord sedan was struck in the rear by a significantly larger, full-sized 1978 GMC Jimmy pickup whose brakes had failed. The pickup struck the sedan at roughly 30 to 35 miles per hour causing the back of the front seat of the Accord to yield. Mr. Benson slid backwards into the rear seat where Mrs. Benson was sitting and caused her to sustain severe injuries to her face. Mr. Benson was essentially uninjured by the crash.

The Bensons' original complaint alleged various defects of the Accord not argued at trial. Shortly before the original trial date of October 21, 1991, the Bensons successfully moved for leave to file their first amended complaint alleging both negligence and strict liability. In this amended complaint, the Bensons sought punitive damages.

The Bensons claimed, inter alia, that Honda's management knew from crash tests that the Accord's front seat back design was defective because it allowed the seat back to yield upon impact thereby thrusting front seat occupants towards rear seat occupants. The Bensons asserted that Honda should have altered the design or should have warned its users of this alleged defect. This became the primary focus of the three-week trial, in addition to an allegation that the front-seat-belt latch plate was defective.

The Bensons maintained that even if all automobile manufacturers' front seat backs were designed to yield so as to reduce the risk of whiplash

injuries to front seat occupants, as Honda's expert declared, Honda still was responsible to make a reasonable effort to restrain front seat occupants or to warn Honda users of the yielding front seat back design.

To defend against these claims of notice of a design defect and negligence, Honda searched its accident claims records and found that it possessed no other claim of a rear seat occupant injured as a result of its yielding front seat back design.

After an *in limine* hearing, the trial court permitted Honda's claims history expert, Mr. Kaye Yuen, to testify about its lack of prior claims regarding rear seat passenger injuries due to rear-end crashes involving Accords with similar seat backs to the one at issue in this case. According to Yuen, approximately 913,000 Honda Accords with similar front seat backs were sold in the United States. No incidents of injury to a backseat passenger from a yielding front seat back had ever been reported to Honda.

At the close of trial, the trial court refused to instruct the jury on punitive damages because the Bensons had not presented any direct evidence that any officer of Honda was aware of the results of rear-end crash tests. As the Bensons requested, the trial court submitted the case to the jury on negligence and products liability theories.

After the jury returned a special verdict in favor of Honda, the trial court entered judgment and this appeal ensued.

### DISCUSSION

■ The primary issue in this appeal is whether the trial court abused its discretion in permitting Yuen to testify regarding the absence of prior similar claims against Honda. This is a question of first impression in California.

■ "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. [Citations.]" (*Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 478-479 [243 Cal.Rptr. 902, 749 P.2d 339].)

Evidence Code section 351 states that "[e]xcept as otherwise provided by statute, all relevant evidence is admissible." Evidence Code section 210 defines "relevant evidence" to be, inter alia, "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

Trial courts should be cautious in exercising their discretion to admit such evidence. They should bear in mind that "problems of prejudice, inability of the opposing party to meet the evidence [of absence of prior claims], and the danger of misleading the jury are substantial." (*Jones* v. *Pak-Mor Mfg. Co.* (1985) 145 Ariz. 121 [700 P.2d 819, 824, 51 A.L.R.4th 1167].)

After reading cases decided by sister-state jurisdictions, and considering the views of commentators on this issue, we hold that trial courts may admit testimony regarding the absence of prior similar claims in cases concerning negligence or strict products liability. Whether a trial court ought to do so depends upon the purpose of such evidence and a showing of foundational requirements.

We agree with the Supreme Court of Arizona which held that "*per se* inadmissibility is 'manifestly incompatible with modern principles of evidence.'" (*Jones* v. *Pak-Mor Mfg. Co.*, *supra*, 700 P.2d at pp. 822, 826.) A per se rule of exclusion would discourage companies from acquiring, recording and maintaining safety performance information. (*Id.*, at p. 826.)

"The essence of a negligence action based on defective design is that defendant distributed a product when it was reasonably foreseeable that its design presented an unreasonable risk of harm. [Citation.]" (*Jones* v. *Pak-Mor Mfg. Co.*, *supra*, 700 P.2d at p. 823.) In a strict products liability action, a plaintiff must prove that the product is unreasonably dangerous and that it is defective. (*Ibid.*, citing Rest.2d Torts, § 402A.)

Accordingly, some of the issues which arise in cases concerning defective design are: 1. the likelihood that the product will cause serious injury, 2. whether the defendant should have foreseen that the product is dangerous as designed, 3. whether a defect exists in the product, and 4. whether a particular danger was unreasonable—the likelihood of its causing serious injury. (*Jones* v. *Pak-Mor Mfg. Co.*, *supra*, 700 P.2d at p. 823.)

"Safety-history, including the presence or absence of prior accidents under similar use, is evidence which may make these ultimate facts 'more probable or less probable than [they] would be without the evidence.' [Citations.]

There can be no doubt that evidence of safety-history is relevant." (*Jones* v. *Pak-Mor Mfg. Co., supra,* 700 P.2d at p. 823; *Stark* v. *Allis-Chalmers and Northwest Roads, Inc.* (1970) 2 Wn.App. 399 [467 P.2d 854, 858]; *Caldwell* v. *Yamaha Motor Co., Ltd.* (Wyo. 1982) 648 P.2d 519, 526-527; *Minichello* v. *U.S. Industries, Inc.* (6th Cir. 1985) 756 F.2d 26, 31; *Payson* v. *Bombardier, Ltd.* (Me. 1981) 435 A.2d 411, 413; *Reiger* v. *Toby Enterprises* (1980) 45 Ore. App. 679 [609 P.2d 402, 404]; *Stanley* v. *Schiavi Mobile Homes, Inc.* (Me. 1983) 462 A.2d 1144, 1149; see also 1 McCormick on Evidence (4th ed. 1992) § 200, pp. 848-851; 1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1982) § 21.8; Fed. Rules Evid., rule 401, 28 U.S.C.)

The trial court should consider what causes of action are alleged, the nature of the action, the character of the evidence proffered and the purpose for which the evidence is intended to be used.

▮ In the instant case, plaintiffs alleged negligence, failure to warn and defective products design regarding the Accord's front seat design. ▮ Because this action involves both negligence and failure to warn, evidence concerning product safety history is particularly relevant. (See *Jones* v. *Pak-Mor Mfg. Co., supra,* 700 P.2d 819; *Reiger* v. *Toby Enterprises, supra,* 609 P.2d 402; *Koloda* v. *Gen. Motors Parts Div., Gen. Motors Corp.* (6th Cir. 1983) 716 F.2d 373.)

Evidence that there have been no prior claims tends to be more relevant in actions alleging negligence, because foreseeability of harm is a primary issue in such cases. (*Jones* v. *Pak-Mor Mfg. Co., supra,* 700 P.2d at p. 825, fn. 3; cf. *Reiger* v. *Toby Enterprises, supra,* 609 P.2d at p. 404 [knowledge of safety in prior related situations admissible in both negligence and products liability actions].) Knowledge of prior similar incidents is also particularly important in actions alleging failure to warn of the alleged defect. (*Koloda* v. *Gen. Motors Parts Div., Gen. Motors Corp., supra,* 716 F.2d at pp. 376-377.)

▮ In a design defect case, an adequate foundation for admission of such evidence may be laid by proffering testimony concerning substantially similar machines used for a reasonable length of time under reasonably similar circumstances. (See *Walker* v. *Trico Manufacturing Company, Inc.* (7th Cir. 1973) 487 F.2d 595, 599; *Stanley* v. *Schiavi Mobile Homes, Inc., supra,* 462 A.2d at p. 1149; *Reiger* v. *Toby Enterprises, supra,* 609 P.2d at p. 404.)

▮ Evidence of the absence of prior similar accidents is especially probative in cases involving theories of negligence and failure to warn when offered, inter alia, to show lack of notice.

■ Nonetheless, " 'lack of notice' . . . does not establish . . . that no injuries had occurred," and it "may not preclude the conclusion that the product was defective and unreasonably dangerous. [Citation.]" (*Jones* v. *Pak-Mor Mfg. Co., supra,* 700 P.2d at p. 824.)

There are two possible explanations why a witness knows of no prior accident. "The first is that there have been no prior accidents; the second is that there have been prior accidents but the witness does not know about them. . . ." (*Jones* v. *Pak-Mor Mfg. Co., supra,* 700 P.2d at p. 824.) ■ Therefore, at minimum, the proponent should proffer evidence through a witness who is familiar with product safety surveys or safety records concerning the product. In *Jones* v. *Pak-Mor Mfg. Co., supra,* 700 P.2d 819, the Arizona Supreme Court disallowed evidence of prior similar claims because it was not supported by any significant product safety survey or safety record search. (But compare *Caldwell* v. *Yamaha Motor Co., Ltd., supra,* 648 P.2d 519, in which the Wyoming Supreme Court allowed such evidence from a witness who merely traveled to motorcycle races and had spoken with riders of defendant's motorcycles; also compare *Minichello* v. *U.S. Industries, Inc., supra,* 756 F.2d at page 31, in which that court held that failure to proffer evidence of systematic safety records or a witness conversant about the part in question goes to weight, not admissibility of such evidence.)

A stronger showing is made by a witness in a product safety department or division which has kept records of the safety performance of the product in question, as here. In *Payson* v. *Bombardier, Ltd., supra,* 435 A.2d 411, for example, the manufacturer of a snowmobile was sued for negligent design of its handlebar which broke off in an accident during a race, injuring a spectator. The defense presented evidence that there had been no prior similar accidents over the four-year period in which he was in charge of compiling product information reports. Those reports concerned over 191,000 snowmobiles of the same model of which more than 80,000 had the same handlebar design. The Supreme Judicial Court of Maine upheld the defense verdict stating that his testimony "was clearly probative and therefore relevant on the issues of a defective condition, notice thereof, or causation. [Citation.]" (*Id.,* at p. 413.)

■ After plaintiffs showed the jury films of federally mandated rear-end test crashes of Honda Accords in which mannequins were propelled into the rear seat area, Honda made an offer of proof that it had no reports of injuries to rear seat passengers due to the yielding of its front seats other than the instant one. Honda proffered the testimony of Yuen that it had searched its records since 1980 for customer complaints, legal claims and lawsuits in which there was either a contention or claim that a rear seat

passenger was injured due to the yielding of a front seat due to a rear-end collision.

Honda offered Yuen's testimony to rebut the evidence that Honda had notice of the alleged dangerous condition involved in this case, and to show that this was a highly unusual, freak occurrence. Honda explained to the trial court that all 1982-1985 Honda Accords had the same seat design.

The trial court found that this evidence would be relevant and probative here, and it then considered whether Yuen was competent to testify as to whether or not there was an absence of similar accidents.

The trial court properly held a hearing pursuant to Evidence Code section 402 before permitting Yuen to testify. Section 402 states, in pertinent part, that "(b) [t]he court may hear and determine the question of the admissibility of evidence . . . . [¶] (c) A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto . . . ."

Yuen's foundational testimony established that he is a product analysis engineer who had been employed by Honda for about 22 years. One of his major duties is to review claims of products liability in the legal department which collects all customer complaints, claims or lawsuits concerning personal injuries as part of its regular course of business. Honda kept a permanent, computerized system to record such complaints made since at least 1970. Honda's safety records department also collects information from police reports and product inspections.

Among the information regularly recorded in its computer system is identification of the vehicles involved, accident descriptions and injuries to the occupants of the vehicles. A narrative section in these records describes accidents in some detail. The information collected includes the location in the automobile of injured persons, the type of collision (e.g., rear-end) and the manner in which the persons were injured (e.g., the yielding of a front seat). Furthermore, the computer system could generate specific information regarding products and accidents involving particular model years.

Yuen testified that Honda's search of its records revealed that the instant case is the only one reported to it involving injury to a rear seat passenger in a rear-end collision due to the yielding of the front seat.

After the trial court held this *in limine* hearing pursuant to Evidence Code section 402, it ruled that the proffered evidence of the absence of similar accidents was relevant and probative. The trial court ruled that the methodology used by Honda was sufficient and that Yuen would be in a position to

testify to its records regarding such vehicles. We agree. That Yuen headed such a product safety division satisfies the strictest test discussed in *Jones*. The trial court limited the scope of testimony to Honda Accords with similar seat backs which were built between 1982-1985. It also determined that the probative value of this evidence outweighed the potential for prejudice or confusion under Evidence Code section 352.

At the trial court and here, plaintiffs opine that such testimony is irrelevant and misleading because it does not prove that such accidents and injuries have never occurred before. The foundation laid at trial is sufficient to assuage such concerns, and the trial court properly ruled that such points were matters for cross-examination and went to the weight of the evidence proffered, not its admissibility. The trial court also properly refused to take judicial notice of the rarity of rear seat passengers.

■ The plaintiffs urged the trial court to admit additional statistics and evidence regarding other incidents in which front seat passengers are thrust backwards in accidents regardless of whether rear seat passengers are present. The trial court properly exercised its broad discretion to limit the scope of evidence presented pursuant to Evidence Code section 352. A trial judge is in the best position to decide whether the probative value of such evidence is outweighed by confusion, undue delay, time consumption, its misleading nature or prejudice. Because the Bensons have not shown that the trial court committed a manifest abuse of its discretion under section 352, we may not disturb the determinations of the trial judge in this case.

The trial court permitted plaintiffs to present a variety of evidence to establish that rear-end accidents in which a larger vehicle strikes a smaller one at over 30 miles per hour are rare, and that there are few rear seat passengers in automobiles.

The trial court also permitted plaintiffs to show films of federally mandated rear-end crash tests simulating crashes of 1984 Honda Accords by a 4,000 pound basher at 30 miles per hour. Those films showed that mannequins were routinely thrown into the rear seat area of the vehicles.

Plaintiffs also had the opportunity to and did highlight weaknesses in Yuen's testimony, including the possibility that there have been similar accidents about which he was not aware.

The parties presented expert testimony concerning the pros and cons of yielding front seat backs. The Bensons pointed out that specific portions of papers written by one of Honda's experts suggested that a more rigid seat

back would be preferable to the instant one which yielded. Honda presented other evidence tending to show that a yielding seat back is better because it tends to lessen whiplash.

*Exhibits*

■ The Bensons urge that the trial court erred in refusing to admit in their entirety several papers co-authored by Honda's expert, Mr. Blaisdell, as to various safety aspects of seat back designs. The Bensons claim that they were admissible under Evidence Code section 1235, as prior inconsistent statements. They are incorrect.

Evidence Code section 1235 states, in pertinent part, that "[e]vidence of *a statement* made by a witness is not made inadmissible by the hearsay rule if *the statement* is inconsistent with his testimony . . . ." (Italics added.) This rule does not permit the wholesale admission into evidence of entire works in which a statement appears.

As the Court of Appeal stated in *People* v. *Morgan* (1978) 87 Cal.App.3d 59, 75 [150 Cal.Rptr. 712], overruled on other grounds in *People* v. *Kimble* (1988) 44 Cal.3d 480 [244 Cal.Rptr. 148, 749 P.2d 803], "[t]he hearsay exception set forth in Evidence Code section 1235 . . . does *not* make admissible any prior statements of a witness that are *not* inconsistent with the witness' testimony, even though such *noninconsistent* statements are made at the same time and as a part of the same conversation in which the inconsistent statements are made."

The trial court provided plaintiffs ample latitude to fully cross-examine Mr. Blaisdell as an expert under Evidence Code section 721. The trial court did not err and no prejudice arose by its decision to admit only the relevant parts of these written works.

■ Similarly, the trial court properly refused to allow the admission of an entire report regarding crash tests from which Honda used one photograph in its case. Evidence Code section 356 states, in pertinent part, "[w]here part of . . . [a] writing is given in evidence by one party, the whole on the same subject may be *inquired into* by an adverse party; . . . when a detached . . . writing is given in evidence, any other . . . writing which is necessary to make it understood may also be given in evidence." (Italics added.)

As the comment by the Assembly Committee on Judiciary explains, this section makes admissible "only . . . such parts of . . . [a] writing as are

relevant to the part thereof previously given in evidence." (See Assem. Com. on Judiciary com. to Evid. Code, § 356, 29B West's Ann. Evid. Code (1966 ed.) p. 249.) Thus, issues of relevancy and section 352 factors are among the mix of concerns which the trial court properly considers in its discretion in determining whether to admit evidence. The trial court did not err in refusing to admit the entirety of exhibits 40, 41, 42 and 55.

### Misconduct of Counsel

On appeal, counsel for both parties opine that opposing trial counsel committed misconduct by exchanging barbs regarding each other's expert witnesses at trial. Because plaintiffs' counsel has not shown that he both objected and requested admonition of the jury to disregard such remarks, the issue was not properly preserved for review in the trial court and we deem the matter waived. (See generally, *Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 317-321 [74 Cal.Rptr. 534, 449 P.2d 750].)

The judgment is affirmed. Costs to Honda.

Gilbert, J., and Yegan, J., concurred.