Filed 5/29/26  Cesena v. So. Cal. Edison Co. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| PATRICIA CESENA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY,<br><br>    Defendant and Appellant. | D084157<br><br>(Super. Ct. No. 37-2019-00059260-CU-PO-NC)<br><br>ORDER MODIFYING THE OPINION<br><br>NO CHANGE IN JUDGEMENT |

THE COURT:

It is ordered that the opinion filed herein on May 1, 2026, be modified as follows.  On page 1, the counsel listing for Defendant and Appellant should be replaced with the following:

> Brian A. Cardoza, Aneiko L. Hickerson; Murchison & Cumming, Scott L. Hengesbach; Greines, Martin, Stein & Richland, Robin Meadow and Kent W. Toland for Defendant and Appellant.

There is no change in the judgment.

BUCHANAN, Acting P. J.

Copies to:  All parties

2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PATRICIA CESENA, | D084157 |
| Plaintiff and Respondent, | (Super. Ct. No. 37-2019-00059260-CU-PO-NC) |
| v. | |
| SOUTHERN CALIFORNIA EDISON COMPANY, | ORDER MODIFYING THE OPINION AND DENYING PUBLICATION |
| Defendant and Appellant. | NO CHANGE IN JUDGEMENT |

THE COURT:

It is ordered that the opinion filed herein on May 1, 2026, be modified as follows:

On page 1, the counsel listing for Plaintiff and Respondent should be replaced with the following:

> Singleton Schreiber and Benjamin I. Siminou; Law Office of Bryan R. Snyder and Bryan R. Snyder; Thorsnes Bartolotta McGuire and R. Christian Hulburt for Plaintiff and Respondent.

The request for publication of the opinion filed by Andrew Spore from Horvitz & Levy on May 19, 2026, is denied.

There is no change in the judgment.

BUCHANAN, Acting P. J.

Copies to:  All parties

Filed 5/1/26  Cesena v. So. Cal. Edison Co. CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PATRICIA CESENA, | D084157 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2019-00059260-CU-PO-NC) |
| SOUTHERN CALIFORNIA EDISON COMPANY, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Brian A. Cardozo, Aneiko L. Hickerson; Muchison & Cumming, Scott L. Hengesbach; Greines, Martin, Stein & Richland, Robin Meadow and Kent W. Toland for Defendant and Appellant.

Singleton Schreiber and Benjamin I. Siminou; Law Office of Bryan R. Snyder and Bryan R. Snyder for Plaintiff and Respondent.

## I.  INTRODUCTION

Patricia Cesena sued Southern California Edison Company (Edison) for injuries she sustained when she fell on a ramp while working at Edison's San

Onofre Nuclear Generation Station (SONGS). Cesena moved in limine to exclude on relevance grounds evidence showing there had never been an accident on that ramp in its 18-plus-year history. The trial court granted the motion in part, allowing this "safety history evidence" for the limited purpose of proving whether Edison had notice of a dangerous condition on its property, but not for proving the underlying question of whether the ramp constituted a dangerous condition in the first place. The court gave a special jury instruction implementing this ruling. Following a nearly three-week trial, the jury found in Cesena's favor and awarded her over $3.3 million.

On appeal, Edison contends the trial court committed prejudicial instructional error by instructing the jury about the limited purpose for which it could consider the safety history evidence. Although we disagree with Edison's characterization of its challenge as being aimed at the special limiting instruction — we view it as being aimed at the underlying evidentiary ruling admitting the evidence for a limited purpose — we agree the trial court erred in excluding the safety history evidence as irrelevant to the issue of whether the ramp constituted a dangerous condition. Under established California law, safety history evidence is relevant to the question of whether a dangerous condition exists because the evidence has a "tendency in reason to prove" that condition. (Evid. Code,[1] § 210; see *Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 37 (*Beauchamp*); *Lupash v. City of Seal Beach* (1999) 75 Cal.App.4th 1428, 1435 (*Lupash*).) Therefore, the trial court's categorical exclusion of the safety history evidence for this

---

[1] Statutory references are to the Evidence Code unless otherwise indicated.

2

purpose was error.  Based on our review of the entire record, however, we further conclude the error did not prejudice Edison.

Accordingly, the judgment is affirmed.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  SONGS

SONGS began operating in the early 1980s.  In 2013, Edison ceased power generation operations at SONGS and began decommissioning (i.e., safely shutting down) the plant.

Cesena's accident occurred in the SONGS Unit 3 spent fuel room, where radioactive fuel removed from the reactors was stored while it cooled in a swimming pool-like facility.  In the room, a "machine . . . kind of like a rail car" operated on train-like rails to move spent fuel around the pool.  Sometime in the 1990s, Edison installed an elevated walkway over these rails to eliminate them as a tripping hazard.  A ramp at each end of the elevated walkway sloped down to ground level.  The ramp at issue here was six feet wide and descended about eight inches in height over a length of about 26 inches, resulting in a 35-percent grade sloping downwards toward the spent fuel room's exit door.  "Diamond plate" metal with approximately four-inch-wide lateral strips of nonslip tape spaced about every four inches covered the ramp surface.  Between the bottom of this ramp and the exit door was a 37-inch-long landing.

The exit door from the spent fuel room to other parts of the Unit 3 facility swung outward and required considerable effort to open due to "differential pressure" inside and outside the spent fuel room.  This differential pressure resulted from federal regulations that required maintaining the spent fuel room in a "negative pressure" state to facilitate

3

radiation monitoring and containment. The differential pressure varied "depend[ing] on . . . the alignment of the air of the ventilation systems" throughout the building. One Edison employee testified the differential pressure made it "a challenge for anybody other than a full-size football player to open [the door]." For this reason, in the 1990s Edison installed a "mechanical assistive device" — commonly called the "breaker bar" — to help pry the door open by breaking the differential pressure seal and allowing the door to open more easily. Edison records showed that the breaker bar sometimes broke but was working properly the day of the accident.

## B. Cesena's Accident

Cesena worked at SONGS consistently from 1994 to 2003, and on "temporary stints" in 2016 and 2017 before returning full-time in August of 2017.[2] Upon her full-time return, Cesena underwent safety training and began a role requiring her to access the spent fuel room. Cesena worked at SONGS five to seven days per week and was "very familiar" with the spent fuel room.

The accident occurred on December 2, 2017. Cesena was waiting to leave the spent fuel room and, as she typically did, asked a coworker to open the door for her. Cesena waited on the ramp's flat, elevated walkway "above the slope" as her coworker Arturo — a "big guy" and "a boilermaker" — opened the exit door. Cesena described the accident at trial: "When he opened the door, . . . the wind came . . . towards us from the pressure. And I

---

[2]     In 2017 Cesena worked for a third-party contractor that Edison hired to perform decommissioning work.

4

saw him come towards me.  And when he came towards me, I went back. And then I slipped on the ramp and I slammed on the wall."

The day after Cesena's accident, SONGS workers replaced the nonslip tape strips on the ramp with wider strips that covered more of the ramp's surface "for better footing."

As we discuss further below, it is essentially undisputed that there were no accidents on the ramp in the 18-plus-year period preceding Cesena's accident.

## C.  Pretrial Proceedings

Cesena sued Edison for negligence, alleging that the pressurized door and the ramp were dangerous conditions.

About a week before the initial trial date, Cesena moved in limine to "exclud[e] all testimony, references to testimony, or argument relating to the *absence* of evidence of prior incidents" at her accident site.  She argued this evidence was irrelevant and was "not admissible to disprove the existence of a dangerous condition."  Cesena relied, in part, on *Thompson v. B.F. Goodrich Co.* (1941) 48 Cal.App.2d 723, in which a patron tripped over an elevated platform in a tire shop while stepping around "an easel-like advertising display rack."  (*Id.* at p. 726.)  The appellate court in *Thompson* concluded the trial court properly excluded "evidence to the effect that many persons had passed [the relevant area] . . . and nobody had ever fallen over the platform before."  (*Id.* at p. 729.)  The court observed that "it has been definitely held that evidence of the *absence* of previous accidents at the same place is not admissible" except in cases involving res ipsa loquitur.  (*Ibid*.)  And in any event, the court found that the evidence was properly excluded because the defendant had not made the foundational showing "that the conditions were

5

similar" inasmuch as "defendant's counsel . . . was not prepared to show that the easel-like advertising display was at any time in the place described by [the] plaintiff." (*Id*. at pp. 729–730.)

Edison opposed Cesena's motion arguing that "the lack of evidence of prior incidents . . . is relevant to establishing that no actionable hazard existed; [Edison] had no notice of a potential hazard; and if there was a fall hazard, it was only trivial." Edison cited *Benson v. Honda Motor Co.* (1994) 26 Cal.App.4th 1337 (*Benson*), which held that " '[t]here can be no doubt that evidence of safety-history is relevant' " because " 'the presence or absence of prior accidents under similar use . . . is evidence which may make these ultimate facts "more probable or less probable than [they] would be without the evidence." ' " (*Id*. at pp. 1344–1345.) Edison argued *Thompson* was distinguishable because that case involved different historical circumstances, whereas the spent fuel room ramp "was in the same position and condition it always was" and variable differential pressure was "long-standing and not isolated."

At the in limine hearing, the trial court stated its tentative ruling was to allow safety history evidence "if proper foundation was laid." The court stated it was "rel[ying] on the *Benson* case" and Edison's position that "the heart of this case [is] foreseeability and notice." Cesena argued "notice is not an issue" because "[Edison] built the ramp. They own the ramp. They have known about the ramp for decades." Edison responded that the notice concept involves more than just notice of the instrumentality but also notice of its dangerous condition. Edison reiterated that safety history is "also indicia of the fact that it's not unsafe." Cesena insisted that "the case law is very clear that the absence of prior incidents is not evidence that the condition is safe." After hearing argument, the court adopted its tentative

6

ruling, finding "the *Benson* case is applicable here" and that "the proper foundation . . . is going to have to be laid before [safety history evidence] comes in." The trial court later continued the trial date.

A few days before the continued trial date, Cesena renewed her motion to exclude safety history evidence. She again cited *Thompson* and argued that "evidence of the absence of prior incidents is irrelevant where notice is undisputed." She further argued *Benson* was distinguishable because it "is a products liability case — not a premises liability case."

Edison opposed the motion but the opposition is not in the appellate record.

At the outset of the hearing on Cesena's renewed motion, the trial court clarified that its "intention" in ruling on Cesena's original motion was that safety history evidence "certainly goes to a lack of notice" but not "to undermining the existence of a dangerous condition." Cesena reiterated her argument that notice is undisputed based on Edison's construction (and, therefore, knowledge) of the ramp. The court rejected this approach as "kind of putting the cart before the horse" by "presupposing that there's a finding" of dangerousness. Having "clarified [its] thoughts" that the safety history evidence could be admitted only as to Edison's notice of a dangerous condition, and subject to a proper foundation being laid, the trial court denied Cesena's renewed motion.

### D. Trial

At trial, the parties presented competing expert opinions on the question of the ramp's dangerousness.

Cesena's "human factors" expert, Carl Beels, testified that the ramp constituted a dangerous condition for several reasons. First, at a 35-percent

slope, it was "extremely steep" — the steepest Beels had ever seen, even in an industrial setting. This steepness was dangerous because "it can cause a person to lose their balance [and] pitch[] forward" when attempting to recover from a loss of balance, and because it decreased traction and made the ramp more slippery. Second, the ramp was slippery because its surface was metal and the intermittent strips of nonslip tape were worn and inadequate. Third, the steep ramp lacked a handrail, which both increased the chances of a person slipping and decreased the chances of recovering from a loss of balance. Finally, the short landing increased the risk of a fall both by exposing people on the ramp to blasts of pressurized air when the door opened, and by providing inadequate space for a falling person to recover before hitting the door.

Edison's biomechanical expert, John Brault, testified that neither the ramp nor the door were dangerous conditions. He based this opinion on his determination that "the slip-resistance values . . . were adequate for th[e] diamond plate area where the incident occurred"; and his understanding "that there were no prior falls," including that "Cesena had been through that door, along with many other people, over a hundred times, including for lunch that day a few hours before the event, without an incident." Brault also testified that Cesena's recollection about the details of her fall were inadequate to allow for any meaningful analysis of how a person would regain balance in that situation.

Edison introduced evidence showing that there had been no accidents on the ramp in the 18-plus-year period before Cesena's accident. This included testimony by long-time SONGS workers about their personal observations and their understanding of Edison's safety training and accident-reporting policies.

8

The trial court gave the jury the following special instruction limiting the uses the jury could make of Edison's safety history evidence: "You have heard testimony that there were no prior falls on the subject ramp. That evidence may not be used to prove that the ramp is not a dangerous condition. It may only be considered with regard to whether . . . Edison had notice of a dangerous condition."

## E. Verdicts

During deliberations, the jury sent three notes regarding damages issues. After deliberating for about two days, the jury found in Cesena's favor. The verdict was 11 to 1 that Edison was negligent, and 10 to 2 that Cesena was not negligent. The jury awarded her more than $3.3 million in damages.

## F. Posttrial Motions

Edison moved for a new trial, arguing the trial court "prejudicially erred by not allowing the jury to consider the absence of prior incidents as evidence that there was no dangerous condition." Edison maintained that the evidence was relevant, an adequate foundation was established, and that the court's special limiting instruction was "erroneous" and "prejudicial." Edison also challenged the sufficiency of the evidence supporting the jury's finding that a dangerous condition existed or that it caused Cesena's accident.

The trial court denied Edison's new trial motion. The court concluded it properly excluded the safety history evidence as irrelevant. And even if the evidence was relevant, the court found it was "in no way dispositive of" dangerousness. Wholly apart from the safety history evidence, the court

9

found that Cesena "provided ample evidence for the jury to conclude that the ramp constituted a dangerous condition separate and apart from the existence or nonexistence of prior similar incidents." This included "photographic evidence and expert testimony that: (1) the ramp was extraordinarily steep; (2) the ramp had no handrails; (3) the ramp was made of steel, which is a slippery surface; (4) the ramp had strips of non-skid tape added to it in intervals (but not over the entire surface); and (5) grip tape suffers wear and tear over time."

The trial court also found that Cesena "provided sufficient evidence that [Edison] had notice of a dangerous condition. Aside from the uncontroverted evidence that [Edison] built and/or installed a ramp that laid at a steep 35% angle, other evidence (which the jury apparently found persuasive) supports a finding that [Edison] had notice that the ramp was a dangerous condition. For example, Mr. Beels testified that the diamond plate steel would be sufficiently slip resistant on a level platform, but not a ramp tilted at a 35% angle — which supports [Cesena]'s theory as to why [Edison] had added non-skid grip tape to the ramp and replaced the tape immediately following [Cesena]'s accident."

The trial court entered judgment for Cesena.

## III. DISCUSSION

Edison contends the trial court committed prejudicial instructional error by instructing the jury that it could consider the safety history evidence only as it pertained to Edison's notice of a dangerous condition and not on the underlying question of whether the ramp constituted a dangerous condition in the first place. In framing the issue as instructional error, Edison seeks our review of the trial court's ruling de novo, viewing the facts in the light

10

most favorable to Edison as the appellant. (See *Alcala v. Vazmar Corp.* (2008) 167 Cal.App.4th 747, 754 ["On an appeal claiming jury instructional error, . . . we view the evidence in the light most favorable to the appellant. In such cases, we assume that the jury might have believed the evidence upon which the instruction favorable to the appellant was predicated."].)

Cesena counters that Edison's appellate challenge is truly a challenge to the trial court's underlying evidentiary ruling, which we review for an abuse of discretion and by viewing the facts in the light most favorable to the judgment. (See *Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 255 (*Ralphs*) ["We review the superior court's evidentiary rulings for abuse of discretion."]; *Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51 [in reviewing evidentiary rulings, "we 'view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it' "].) Cesena argues that the trial court acted within its discretion in excluding the safety history evidence and that any error was not prejudicial.

For reasons we will explain, we find the nature of Edison's appellate challenge to be evidentiary, not instructional. So framed, we conclude the trial court abused its discretion in excluding Edison's safety history evidence for purposes of evaluating a dangerous condition. We further conclude, however, that the error did not prejudice Edison.

## A. The Nature of Edison's Appellate Challenge is Evidentiary, Not Instructional

Edison characterizes its appellate challenge as flowing from the trial court's special instruction that safety history evidence "may not be used to prove that the ramp is not a dangerous condition" and "may only be

11

considered with regard to whether . . . Edison had notice of a dangerous condition." Edison reasons its challenge is instructional rather than evidentiary because the trial court's evidentiary ruling *admitted* the safety history evidence — it was the instruction that *limited* what the jury could consider it for. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 889 ["the general rule [is] that evidence is properly considered on all issues unless expressly limited upon request"].)

Cesena disagrees, arguing that the limiting instruction was simply "a byproduct" or "implement[ation]" of the underlying evidentiary ruling.[3] This argument finds support in section 355, which states: "When evidence is admissible . . . for one purpose and is inadmissible . . . for another purpose, the court upon request shall restrict the evidence to its proper scope *and instruct the jury accordingly*." (Italics added.) In other words, courts must give a limiting instruction when they grant a request to admit evidence for a limited purpose. We find it unlikely the Legislature intended by this requirement to convert every alleged evidentiary error into an instructional error.

Cesena also argues that adopting Edison's instructional challenge framework would lead to absurd results. On one hand, if a trial court admits certain evidence for some purposes but excludes it for others, the court will give a limiting instruction explaining this ruling. Treating an appellate challenge to this "mixed bag" ruling as raising a claim of instructional error would subject it to the more appellant-friendly de novo standard of review. On the other hand, if a trial court completely excludes certain evidence for all

_____

[3] At the hearing on Edison's new trial motion, the trial court agreed with Cesena that the limiting instruction "simply implements the court's order" admitting the safety history evidence for a limited purpose.

12

purposes, the court would not give a limiting instruction. Treating an appellate challenge to this draconian ruling as raising a claim of evidentiary error would subject it to review under the abuse of discretion standard, viewing the facts favorably to the judgment. Thus, Edison's proposed approach would have the effect of imposing a higher appellate burden (abuse of discretion) on an appellant facing a less favorable trial court ruling (complete exclusion) and imposing a lower appellate burden (de novo review) on an appellant facing a more favorable ruling (admission for a limited purpose). We decline to apply such a framework.

We therefore conclude that Cesena has the better of the characterizations of Edison's appellate challenge. Accordingly, we will treat the challenge as a claim of evidentiary error rather than instructional error.[4]

## B. The Trial Court Erred in Excluding the Safety History Evidence as Irrelevant

The trial court found Edison's safety history evidence irrelevant to the question of whether the ramp constituted a dangerous condition. This was error.

"As a general matter, evidence may be admitted if relevant." (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1213; §§ 351 ["Except as otherwise provided by statute, all relevant evidence is admissible."], 350 ["No evidence is

---

[4]     Because we find this to be a close issue, we decline Cesena's invitation to deem Edison's challenge forfeited for "failing to tailor its arguments to the applicable standard of review." (See *Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 598 ["The failure to tailor arguments to the appropriate standard of review . . . forfeits [the appellant]'s claim that the trial court's findings were not supported by substantial evidence."].)

13

admissible except relevant evidence."].)  "Relevance is a low bar."  (*People v. Villa* (2020) 55 Cal.App.5th 1042, 1052.)  " 'Relevant evidence' " is "evidence . . . having *any* tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210, italics added.)  " ' " 'The test of relevance is whether the evidence tends, "logically, naturally, and by reasonable inference" to establish material facts.' " ' "  (*Coffey*, at p. 1213.)  This "test . . . is not a strict one."  (*Ibid.*)

As noted, we review the trial court's evidentiary rulings for an abuse of discretion.  (See *Ralphs*, *supra*, 17 Cal.App.5th at p. 255.)  "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).)  But " '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ."  Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' "  (*Ibid.*; see *Kourounian v. California Dept. of Tax & Fee Administration* (2023) 91 Cal.App.5th 1100, 1112 (*Kourounian*).) "To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' " (*Sargon*, at p. 773.)

The legal principle and policy at issue here is whether safety history evidence is relevant to determining the existence of a dangerous condition in a premises liability action.  "There can be no doubt that evidence of safety-history is relevant." (*Benson*, *supra*, 26 Cal.App.4th at p. 1345.)  In *Benson* — on which the trial court relied in denying Cesena's initial motion in limine — the court explained that safety history evidence satisfies the relevance test

14

because the evidence makes the determination of whether a product is unsafe " ' "more probable or less probable than [it] would be without the evidence." ' " (*Id*. at p. 1344.)

Although *Benson* was a product liability case, *Beauchamp*, *supra*, 273 Cal.App.2d 20, reached the same conclusion in a traditional premises liability lawsuit. (*Id*. at pp. 36–37.) The plaintiff in *Beauchamp* sued a golf course after she slipped on a paved walkway. (*Id*. at p. 23.) The course manager testified "he had never been notified of any accidents concerning th[e] particular area in question, other than [the plaintiff]'s, and . . . that between 3,500 and 4,000 people a month traversed the area." (*Id*. at p. 24.) The appellate court concluded that, since California's adoption of the Evidence Code, this type of evidence is relevant and admissible because it "seem[s] pertinent as one circumstance . . . of the existence or nonexistence of an unreasonable risk of harm." (*Id*. at p. 37, citing §§ 210, 350, 351; see 1 Witkin, Cal. Evidence (6th ed. 2023) Circumstantial Evidence, § 128, p. 483 ["Under [§] 351, making all relevant evidence admissible unless otherwise provided by statute [citation], it would seem clear that this evidence is admissible."].) The *Beauchamp* court explained that, under " 'the theory of probable responsibility,' " the " 'operation of an instrumentality for a reasonable period of time under similar circumstances may have a tendency to show that in the ordinary course of things, an accident not having previously occurred, there is no reason to anticipate one.' " (*Beauchamp*, at p. 36.) Although the *Beauchamp* court cautioned that "the absence of other accidents is not proof per se that no dangerous condition existed" (*id*. at p. 38), it is nonetheless relevant to that determination (*id*. at p. 37; see *DeRuyver v. Omni La Costa Resort & Spa, LLC* (S.D. Cal., Mar. 8, 2019, No. 17-CV-00516-H-AGS) 2019 U.S. Dist. LEXIS 38881, at *3 [denying the

15

plaintiff's motion in limine "to exclude any and all evidence . . . relating to the lack of prior similar coffee spill incidents . . . because the lack of prior incidents is admissible and relevant"]).

Courts have applied similar reasoning in cases alleging the existence of a dangerous condition on public property. For example, in *Lupash*, *supra*, 75 Cal.App.4th 1428, a junior lifeguard sued a city for injuries he sustained during a beach competition sponsored by the city. (*Id*. at pp. 1431–1433.) On appeal from the trial court's grant of nonsuit, the plaintiff "challenge[d] the probative value" of evidence showing that "in the decades of intensive use by the public and by junior lifeguards (including previous competitions and hundreds of thousands of entries), there never had been any other incident or accident." (*Id*. at p. 1435, italics omitted.) Citing *Benson*, the *Lupash* court held that this evidence "was properly considered by the court in evaluating the dangerousness of this particular beach and the notice to defendants." (*Ibid*., citing *Benson*, *supra*, 26 Cal.App.4th at p. 1344.)[5]

---

[5]   Many other courts have reached similar conclusions. (See, e.g., *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 237 [this court holding that "evidence of 'safety history' offered by the City (the lack of prior accidents over five years' use of the park) was proper" because, "[w]here the period of safe use is long or the experience is otherwise extensive, the trend is to admit this kind of negative [inference] evidence"]; *Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 764 [finding evidence relevant to the determination of whether an intersection was dangerous where the evidence showed a "lack of any similar collisions over the 10 years preceding the accident during which tens of millions of vehicles passed through th[e] intersection"]; *Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337, 1346 (*Lane*) [finding "the absence of other similar accidents . . . 'relevant,' " though not "*dispositive*," " 'to the determination of whether a condition is dangerous' "].)

16

Cesena does not seriously dispute Edison's position that safety history evidence is relevant, in the abstract. Instead, citing *Benson* and *Beauchamp*, she maintains that for Edison to show the trial court erred, Edison also "must show that [the evidence's] probative value outweighs the potential for undue prejudice or misleading the jury." Cesena's argument is unpersuasive for several reasons.

First, Cesena is invoking section 352, which grants a trial court the discretion to exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."[6] The *Benson* court discussed section 352 because the appellant raised that objection in the trial court. (*Benson, supra,* 26 Cal.App.4th at p. 1348.) And the *Beauchamp* court stated that section 352 considerations are relevant to a trial court's determination of whether an adequate foundation has been laid to show that historical site conditions are sufficiently similar to the condition at the time of the accident. (*Beauchamp, supra,* 273 Cal.App.2d at p. 38 ["If the period of time and the number of users of the premises are sufficiently great that the trial court concludes the evidence is reliable, it is admitted. But such evidence need not be admitted if there would be confusion of collateral issues, because of marked differences in the circumstances of use. (Evid. Code, § 352.)"].) Neither of these situations are implicated here.

_____

[6] Cesena inverts the section 352 standard when she says Edison "must show that [the evidence's] probative value outweighs the potential for undue prejudice or misleading the jury." On the contrary, the statute authorizes exclusion when the evidence's "probative value is substantially outweighed" by the listed countervailing concerns. (§ 352.)

In contrast to *Benson*, Cesena did not object in the trial court on section 352 grounds; she objected only on relevance grounds. Nor does the record indicate that the trial court base its ruling on section 352 considerations. (See *Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 599 ["If a proper objection under section 352 is raised, the record must affirmatively demonstrate that the trial court did in fact weigh prejudice against probative value. The trial court need not make findings or expressly recite its weighing process, or even expressly recite that it has weighed the factors, so long as the record as a whole shows the court understood and undertook its obligation to perform the weighing function."].) An appellate court will not consider, in the first instance, a section 352 discretionary analysis that the trial court was never asked to conduct and which the court did not, in fact, conduct. (See *Agricultural Labor Relations Bd. v. Laflin & Laflin* (1979) 89 Cal.App.3d 651, 666, fn. 16 ["It would be both inappropriate and futile for us to attempt to review for abuse a discretion the court was never requested to exercise and did not purport to exercise."].)

And unlike the foundational concerns raised in *Beauchamp*, the trial court here did not find the safety history evidence irrelevant due to Edison's failure to demonstrate that historical ramp conditions were substantially similar to conditions at the time of Cesena's accident. To the contrary, in admitting the safety history evidence as to Edison's notice of a dangerous condition, the trial court must have found implicitly that Edison's evidentiary foundation was sufficient. The trial court's exclusion of this same evidence on relevance grounds, then, must have been based on the trial court's determination that the evidence was categorically inadmissible on the ramp safety question — regardless of foundation.

In effect, the trial court deemed the safety history evidence irrelevant as a matter of law on the question of whether the ramp constituted a dangerous condition.  Under the applicable principles and policies discussed above, this was legal error.  Accordingly, the court abused its discretion in excluding the evidence on relevance grounds as to the ramp's dangerousness. (See *Sargon*, *supra*, 55 Cal.4th at p. 773; *Kourounian*, *supra,* 91 Cal.App.5th at p. 1112 ["An evidentiary ruling that 'rests on an error of law is an abuse of discretion.' "].)

## C.  The Trial Court's Error Was Not Prejudicial

Having found that the trial court erred by excluding Edison's safety history evidence on the issue of whether the ramp constituted a dangerous condition, we may only reverse the judgment if the "the error complained of has resulted in a miscarriage of justice."  (Cal. Const., art. VI, § 13; see § 354 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless . . . the error or errors complained of resulted in a miscarriage of justice"]; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [applying this standard to evidentiary error]; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 (*Soule*) [applying this standard to instructional error].)  A miscarriage of justice occurs only when " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' "  (*Cassim*, at p. 800, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836; accord, *Soule*, at p. 574.)  Our Supreme Court " 'ha[s] made clear that a "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' "  (*Cassim*, at p. 800, italics omitted.)  "It is the appellant's

19

burden to establish that [an] error was prejudicial." (*Bjoin v. J-M Manufacturing Co., Inc.* (2025) 113 Cal.App.5th 884, 900.)

Although we have found the trial court's error to be evidentiary rather than instructional, the parties' briefing regarding prejudice centers around the factors that apply to instructional error. These factors include "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Soule*, *supra*, 8 Cal.4th at pp. 580–581.) Considering the entire record in light of these factors, we conclude Edison has not met its burden to show that the trial court's error prejudiced Edison.

### 1. State of the Evidence

Edison argues this factor supports a finding of prejudice because Cesena's evidence regarding "dangerous condition" and "consciousness of risk" was "scant," whereas Edison's safety history evidence was "strong." We are not persuaded.

Cesena's evidence of a dangerous condition was strong. She presented expert testimony from Beels, who opined the ramp was dangerous because it was too steep, too slippery, lacked a handrail, and had an inadequate landing area. Photo and video exhibits supported this testimony. In denying Edison's new trial motion, the trial court, "sitting as the 13th juror" (*Collins v. Union Pacific Railroad Co.* (2012) 207 Cal.App.4th 867, 883), found that this was "ample evidence for the jury to conclude that the ramp constituted a dangerous condition separate and apart from the existence or nonexistence of prior similar incidents." (See *Barrese v. Murray* (2011) 198 Cal.App.4th 494, 503 [" 'It is not only the right, but the duty of the trial judge to grant a

20

new trial when, in his opinion, he believes the weight of the evidence to be contrary to the finding of the jury.' "].)  We agree.

Nor was the evidence of Edison's "consciousness of risk" — that is, Edison's notice of a dangerous condition — "scant."  Cesena introduced evidence showing that Edison installed nonslip tape strips when it first installed the ramp and that SONGS workers replaced the tape and increased its coverage area on the ramp the day after Cesena's fall.  Cesena argued that both of these circumstances suggested Edison understood the ramp was dangerous.  The trial court found this evidence persuasive in denying Edison's new trial motion.

Edison counters that the tape evidence does not "demonstrate[] consciousness of risk" because "Cesena fell *before* she stepped on the ramp" (i.e., while she was standing on the flat, elevated walkway portion).  But Beels testified that the steepness and slipperiness of the ramp could still have played a role in the accident because Cesena likely stepped or slipped on the ramp after losing her balance on the flat walkway but before colliding with the wall near the door.  Indeed, Beels showed the jury diagrams he created showing the accident happening this way.

Regarding evidence of notice, however, the trial court expressly instructed the jury that it *could* consider the safety history evidence to determine "whether . . . Edison had notice of a dangerous condition."  Toward that end, Edison introduced extensive safety history evidence through several long-time SONGS supervisors and employees.  The fact that the jury found Edison liable reflects the jury found Edison's safety history evidence

21

unpersuasive.[7]  That is, by finding Edison liable, the jury necessarily found — despite the extensive safety history evidence that was expressly admissible on this specific point — that Edison had notice that the ramp was a dangerous condition.  We therefore conclude the safety history evidence was not nearly as persuasive as Edison claims.

Edison offers two ways in which the jury could have found the notice element satisfied even "without considering the safety history evidence." First, Edison reasons that although the instructions did not define the term "notice," the instructions as a whole made clear that notice "implicates foreseeability."[8]  But because, according to Edison, "the [special] instruction excluded foreseeability as a basis for considering the safety history evidence," the jury must have found the notice element satisfied "without considering the safety history evidence."  The flaw in this reasoning is that if the instructions as a whole implied that notice encompasses foreseeability, then the special instruction allowing the jury to consider the safety history evidence for notice did not preclude the jury from also considering that evidence as to the subsumed issue of foreseeability.  (See *Cumbre, Inc. v. State Comp. Ins. Fund* (2010) 189 Cal.App.4th 1381, 1388 [when considering jury instructions, "we examine all the circumstances of the case including a

---

[7]    The court instructed the jury that, to find Edison liable, the jury had to find (among other things) that Edison "knew or, through the exercise of reasonable care, should have known about" a dangerous condition on its property.

[8]    For example, other instructions told the jury to consider "[w]hether [Edison] knew or should have known of the condition that created the risk of harm";  that Edison "was negligent . . . if" it "knew or, through the exercise of reasonable care, should have known about" a dangerous condition; and, in evaluating constructive notice, to consider "whether [Edison] should have known of the condition that created the risk of harm."

22

review of all the evidence, as well as the instructions as a whole"].) To the contrary, the special instruction permitted it.

Second, Edison theorizes that the jury could have found the notice element satisfied without considering the safety history evidence if the jury "bought Cesena's reductive pitch . . . that because Edison built the ramp, it had *actual notice* that the ramp was dangerous." This ignores that the special instruction related to more than whether Edison merely had notice of a particular instrumentality, but rather, whether "Edison had notice of a dangerous condition." In other words, the jury had to find first, not only that Edison knew about the ramp it built, but second, that Edison knew that the ramp was "a dangerous condition." Indeed, Edison made this argument to the trial court at the renewed in limine hearing while explaining why the safety history evidence was relevant to notice. Consequently, we conclude it is likely that, in considering the notice issue, the jury considered Edison's safety history evidence, not just "Cesena's reductive pitch" that Edison built the ramp.

Beyond the safety history evidence, Edison's primary evidence regarding safety was Brault's expert testimony that the ramp did not constitute a dangerous condition. But Brault based his opinions regarding the ramp's safety on his evaluation of the flat, elevated walkway portion of the ramp; he did not assess the safety of the sloped portion. Brault also testified — in contravention of the trial court's in limine ruling, but without objection from Cesena — that he based his opinion in part on the absence of prior accidents on the ramp. Yet, while Brault's opinion may have been *relevant* on the issue of the ramp's safety, it was not *dispositive*. (*Lane, supra*, 183 Cal.App.4th at p. 1346.) Nor, given the limited bases for Brault's opinions, are we persuaded that the jury would have found his opinions more

23

persuasive than Beels's opinions. (See *People v. Engstrom* (2011) 201 Cal.App.4th 174, 187 ["Expert opinion is not binding on a jury. The jury is free to reject even the uncontradicted testimony of an expert witness."]; accord, *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632.)

Continuing its attack on the state of the evidence, Edison argues the "evidence of causation" was "weak" for two "significant" reasons. First, Edison asserts "there is no evidence that conditions on the day of the accident were any different from other days when Cesena used the ramp and exited the facility without incident . . . or from any of the thousands of days during the 18+ years of the ramp's existence." The record contradicts this claim. One Edison witness — a supervisor who worked at SONGS on and off for a total of about 15 years beginning in 1992 — testified that on the day of the accident, ventilation hatches in the spent fuel room were closed, which increased the differential pressure.

Second, Edison contends "there is really no evidence that the ramp contributed to Cesena's fall." As noted above, however, Beels testified and illustrated how the steepness of the sloped portion of the ramp could contribute to a fall by someone who lost their balance on the flat portion.

Edison also complains that while the trial court barred Edison from introducing its safety history evidence, it allowed Cesena to introduce numerous Edison records documenting requests for remedial action on issues "that had nothing to do with the allegedly dangerous ramp," like "the door and the breaker bar." Edison has not appealed the trial court's admission of these repair records or otherwise shown that admitting them was error. And in any event, Edison countered this evidence at trial by introducing evidence showing that the breaker bar was working on the day of the accident.

24

Finally, Edison asserts that "the evidence was undisputed that the slope of the ramp was unavoidable, since it was built to provide clearance over necessary rails" (i.e., "the ramp structure ha[d] to come up to the height of the rail").  But the trial court's in limine ruling did not preclude Edison from making this point at trial — indeed, Edison did make it.  And even if the steepness of the ramp was unavoidable, Edison does not explain why that would have prevented Edison from addressing other aspects of the ramp that led Beels to opine it was dangerous (e.g., by covering more of the ramp's surface with nonslip tape and by adding a handrail).

For these reasons, we conclude that the state of the evidence weighs against finding prejudice.

### 2.  Effect of Other Instructions

Edison argues "no other instructions mitigated the effect of the erroneous special instruction."  Cesena responds that "Edison's interests were adequately addressed" by the "knew or should have known" instructions.  (See footnote 8, *ante*.)  She also cites the special instruction's admonition that the jury could consider the safety history on the notice issue.

We find this factor neutral on the issue of prejudice.

### 3.  Effect of Counsel's Argument

For this factor, we consider "whether respondent's argument to the jury may have contributed to the instruction's misleading effect." (*Drury v. Ryan* (2025) 109 Cal.App.5th 1102, 1112 (*Drury*); see *Soule, supra*, 8 Cal.4th at p. 570.)  Here, that would be Cesena's counsel arguing to the jury that it was not allowed to consider Edison's safety history evidence when deciding

25

whether the ramp constituted a dangerous condition.  Cesena's counsel made no such argument.

On the other hand, Edison's counsel argued that the safety history evidence proved not only that Edison had no notice of a dangerous condition, but also — contrary to the trial court's in limine ruling — that the ramp did not constitute a dangerous condition in the first place.

This factor therefore weighs against finding prejudice.

### 4.  Any Indication the Jury Was Misled

Edison argues that "this factor does not affect the analysis" because "nothing in the jury's three questions suggests any concerns about any jury instructions."  We agree that the jury's notes about damages do not reflect confusion on the dangerousness issue.  But that conclusion "*does . . .* affect the analysis" — it suggests there was no prejudice.

In addition, the jury's verdicts — 11 to 1 that Edison was negligent and 10 to 2 that Cesena was not negligent — were not close.  (See *Drury*, *supra*, 109 Cal.App.5th at p. 1113 ["the closeness of the jury's verdict" is relevant when assessing prejudice]; *Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 305–306 ["Equally unpersuasive as a factor in assessing prejudice is the 11-to-1 verdict in favor of [the respondent].  Even a verdict of 10 to 2 has been deemed 'not particularly close' [citation], and thus not helpful in assessing the impact of the instructional error."]; cf. *Kourounian*, *supra*, 91 Cal.App.5th at p. 1119 ["This was a nine-to-three verdict, a close case."].)

26

### 5. Conclusion

Considering the relevant factors in light of the entire record, we conclude the trial court's evidentiary error did not prejudice Edison.

## IV.  DISPOSITION

The judgment is affirmed.  Cesena is entitled to her costs on appeal.

RUBIN, J.

WE CONCUR:

BUCHANAN, Acting P. J.

CASTILLO, J.

27